**William H. JOHNSON**

v.

**John P. TRAYNOR, Deputy Commissioner, United States Department of Labor**

and

**Nacirema Operation Company, Inc., a body corporate.**

**Julia T. KLOSEK, widow of Joseph J. Klosek, deceased employee**

v.

**John P. TRAYNOR, Deputy Commissioner, United States Department of Labor**

and

**Nacirema Operating Company, Inc., a body corporate.**

Nos. 4704, 4705.

United States District Court
D. Maryland.
June 22, 1965.

John J. O'Connor, Jr., O'Connor & Preston, Baltimore, Md., for complainants.

Randall C. Coleman and Thomas W. Jamison, III, Baltimore, Md., for respondent Nacirema Operating Co., Inc.

Thomas J. Kenney, U. S. Atty., and Joseph H. H. Kaplan, Asst. U. S. Atty., Baltimore, Md., for Deputy Commissioner; Charles Donahue, Sol. of Labor, Alfred H. Myers and George Lilly, United States Dept. of Labor, Washington, D. C., of counsel.

WATKINS, District Judge.

These companion proceedings were brought by William H. Johnson, injured longshoreman, and Julia T. Klosek, widow of Joseph J. Klosek, deceased longshoreman, pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (the Longshoremen's Act) to review and set aside, as not in accordance with law, compensation orders filed by John P. Traynor, Deputy Commissioner, United States Department of Labor, denying compensation benefits under the act to the claimants. The factual background giving rise to each claim is identical, the same legal question is presented as to each claim and counsel for the respective parties are the same in each case. Accordingly, the Deputy Commissioner held a combined hearing on both claims and in this court likewise the proceedings for review in both cases have been combined.

The facts as found by the Deputy Commissioner are not in dispute. On November 14, 1963 Johnson and Klosek, longshoremen and employees of the Nacirema Operating Company, Inc., were engaged in loading the S.S. Bethtex, a vessel afloat in the navigable waters of the Patapsco River at Sparrows Point, Maryland. Both men were assigned to and stationed in a gondola type railroad car which was sixty feet in length, ten feet in width and nine feet in height and was positioned on railroad tracks on the High Pier at the Bethlehem Steel Plant at Sparrows Point. The longshoremen were engaged in hooking up approximately ten ton drafts of steel beams which were then hoisted from the railroad car by use of a crane located on the S.S. Bethtex. One such draft while being lifted into a hold of the vessel swung back, struck Klosek and propelled him head first out of the gondola onto the pier, fatally injuring him. Johnson was pinned by the same draft against the side of the gondola car and suffered serious injuries. The pier on which the accident took place is permanently affixed to the land at its northernmost end. Its surface extends over the waters of the Patapsco River in a southerly direction. The pier is approximately six hundred feet long and its surface consists of three sets of railroad tracks on each side, which tracks are extensions of tracks originating in the railroad shifting yard of the adjacent Bethlehem Steel properties. There is a fifty foot center strip on the pier which is covered by steel plating. At the time of the injury the S.S. Bethtex was docked stern in on the east side of the pier. The gondola car in which the decedent and injured claimant were working was situated parallel to and alongside the vessel on the third railroad track.

Claims were filed on behalf of both claimants under the Maryland Workmen's Compensation Act. (Article 101, section 1 et seq., Annotated Code of Public General Laws of Maryland, 1957 Edi-

tion). Johnson has been paid in accordance with the Maryland State Workmen's Compensation Act schedule and although Mrs. Klosek has apparently not as yet received any benefits, her claim has not been contested by Nacirema Operating Company or its insurance carrier and the court is advised that it is anticipated that compensation will be forthcoming under the Maryland Act.

In addition Johnson and Mrs. Klosek submitted timely claims against Nacirema Operating Company under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.; he for temporary and permanent disability and she for death benefits. Answers were filed on behalf of the employer and insurance carrier raising, among other defenses, lack of jurisdiction over the subject matter of the compensation claims. The hearing before the Deputy Commissioner was limited to the question of jurisdiction and it is the sole issue before this court. The Deputy Commissioner rejected both claims for compensation on the ground that the disability of Johnson and the death of Klosek did not result "from an injury occurring *upon the navigable waters* of the United States (including any dry dock)", emphasis supplied, as that jurisdictional prerequisite for the applicability of, and for coverage under, the provisions of the Longshoremen's and Harbor Workers' Compensation Act has been interpreted by the courts.

Section 903(a) of Title 33, U.S.C.A., entitled "Coverage" provides, in pertinent part:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

Claimants urge two grounds for finding them within the coverage of the Act:

(1) That in simple fact both wharves and ships are upon the water and that accordingly there should be no difference in the result as to coverage between injuries occurring on a wharf or pier over and upon navigable waters and injuries occurring on a deck of a vessel over and upon navigable waters and (2) that in any event the Extension of Admiralty Jurisdiction Act of 1948 (46 U.S.C.A. § 740) by embracing within the admiralty and maritime jurisdiction of the United States Courts certain shoreside injuries has likewise extended the coverage of the Longshoremen's and Harbor Workers' Compensation Act to injuries occurring on land. The court will consider these two contentions in turn.

■ (1) It has been uniformly held that structures such as wharves, piers, etc., affixed permanently to shore and bed, are extensions of land, remedies for injuries upon which are restricted to those afforded by local rather than admiralty law. (Swanson v. Marra Brothers, 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; State Industrial Commission of State of New York v. Nordenholt Corp., 1922, 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933; American Export Lines, Inc. v. Revel, 4 Cir. 1959, 266 F.2d 82, 84; see also: Hastings v. Mann, 4 Cir. 1965, 340 F.2d 910, 911–912; Benedict on Admiralty, section 29, page 64, 6th Edition; Gilmore & Black, The Law of Admiralty, section 6–46, page 339, 1957 Edition; and Robinson on Admiralty, section 11, page 81, 1939 Edition). In

the Nordenholt case, decided prior to the enactment of the Longshoremen's Act, the Supreme Court of the United States clearly held that an injury incurred by a longshoreman who, while engaged in unloading a vessel lying in navigable waters, slipped and fell on the "dock"[1] was a land injury and, therefore, that recovery for such an injury was governed by the local state workmen's compensation act and not by general maritime law. After the enactment of the Longshoremen's Act the Supreme Court of the United States reaffirmed the principle set out in the Nordenholt case and adhered to it without deviation in the Swanson case. Swanson, a longshoreman, while on a pier and while engaged in loading cargo on a vessel lying alongside, was injured when a life raft fell from the vessel and struck him. The specific question before the court was whether or not the longshoreman had a right of action against his employer, a stevedoring company, under the Jones Act while working on shore. The court clearly treated the stevedore's injury as a land injury and in interpreting the inter-relationship of the Longshoremen's Act and the Jones Act stated:

"We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the Haverty case[2] only such rights to compensation as are given by the *Longshoremen's Act.* But since

---

1. Webster's Third New International Dictionary, Unabridged, recognizes that the meaning of the word "dock" is not restricted to "the waterway extending between two piers or projecting wharves or cut into the land for the reception of ships" (4 dock 1 c) but may also properly be used to describe a structure built on pilings such as a wharf or pier (4 dock 2 a), the word being used in the latter sense in the Nordenholt case.

2. In International Stevedoring Company v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19,

71 L.Ed. 157, a longshoreman who was injured while stowing cargo and while on but not employed by a vessel lying in navigable waters, was allowed to bring suit under the Jones Act against his stevedore company employer to recover for injuries allegedly caused by the employer's negligence. This decision was, of course, rendered prior to the enactment of the Longshoremen's Act, which now provides the "exclusive" right of recovery of the longshoreman against his employer.

this Act is restricted to compensation for injuries occurring on navigable waters, it *excludes* from its own terms and from the Jones Act *any remedies* against the employer *for injuries inflicted on shore*. The Act leaves the injured employees in such cases to pursue the remedies afforded by the local law, which this Court has often held permits recovery against the employer for injuries inflicted by land torts on his employees who are not members of the crew of a vessel." (Swanson v. Marra Bros., 1946, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045 emphasis supplied).

Eleven years after the enactment of the Extension of Admiralty Jurisdiction Act of 1948, the United States Court of Appeals for the Fourth Circuit clearly and unmistakably stated in the Revel case that the Nordenholt-Swanson principle was still the law. Revel, a stevedore, was working on the pier alongside a hold preparing cargo to be hoisted onto the vessel and stowed in the hold. A pallet load of drums, part of the cargo being hoisted, fell onto the pier injuring him. He thereafter received and accepted compensation in accordance with the local state workmen's compensation act. Subsequently, he brought suit, to recover damages for his personal injuries, against the owner of the vessel which he had been helping to load at the time of the accident. On appeal, in analyzing the injured longshoreman's right of recovery as against his stevedoring company employer the United States Court of Appeals for the Fourth Circuit said:

"Since Revel was injured while standing on the dock, (an extension of the land) his remedies are restricted to those afforded by the local law. Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; State Industrial Comm. [of State of New York] v. Nordenholt Corp., 1922, 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933; * * *." (American Export Lines, Inc. v. Revel, 4 Cir. 1959, 266 F.2d 82, 84).

█ In contrast to the myriad of cases holding that wharves, pilings, piers and like structures are extensions of land,[3] not one case has been cited by the claimants holding, or even suggesting, that a pier or similar structure could be considered not as being an extension of land but rather as being upon navigable waters. Accordingly, this court holds that the High Pier at the Bethlehem Steel Plant at Sparrows Point is an extension of land and that the death and injury occurring thereon did not occur "upon the navigable waters of the United States."

(2) The claimants thus fall back on their argument that the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C.A. § 470, by embracing within the admiralty and maritime jurisdiction of the United States certain shoreside injuries, in effect amended the coverage provision of the Longshoremen's and Harbor Workers' Compensation Act and extended coverage under the latter act to certain types of land injuries. For claimants to prevail an amendment must be shown because it is clear that, when the Longshoremen's Act was initially passed in 1927, Congress did not intend to extend coverage to land injuries although it had been urged to. One writer stated the problem in 1926 as follows:

"The fact that admiralty has never assumed jurisdiction over long-

---

3. See in addition to those previously cited: Cleveland Terminal & Valley Railroad Company v. Cleveland Steamship Company, 1908, 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508; Smith & Son v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L. Ed. 520; Johnston v. Marshall, 9 Cir. 1942, 128 F.2d 13, cert. den. 1942, 317 U.S. 629, 63 S.Ct. 44, 87 L.Ed. 508; Kent v. Shell Oil Co., 5 Cir. 1961, 286 F.2d 746; Connor v. United States et al., D.C. E.D.Pa.1949, 87 F.Supp. 847; and the recent cases of Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297; Hagans v. Ellerman and Bucknall Steamship Company, 3 Cir. 1963, 318 F.2d 563, 582.

shoremen while on the dock (Nordenholt case) indicates definitely that, so far as the courts are concerned, the work of loading and unloading vessels will continue to be a divided process as regards work on and off the vessel, unless legislation intervenes. \* \* \* the only inclusive method remaining is for Congress to assume jurisdiction over the entire subject, either as elements in the performance of maritime contracts or by virtue of its power under the commerce clause of the Constitution." (Clark, "The Longshoreman and Accident Compensation", 22 Monthly Labor Review

April 1926), pages 5 and 18).

Much of the testimony before the Senate urged that the coverage provisions of the bill extend to land injuries as well as injuries upon navigable waters. Mr. William F. Dempsey, representing the International Longshoremen's Association, declared that the bill should be drafted to cover a longshoreman even were he injured on the dock:

> "If he is working in maritime employment it is the same whether on the docks or on board ship, because the cargo has to be assembled on the dock and handled there in order to go on board ship." (Senate Hearings, pages 26 to 27).

Mr. Lindley D. Clark, for the Bureau of Labor Statistics, pointed out that Congress in enacting this legislation could rely for its authority not only upon the admiralty and maritime power but also upon the commerce clause of the Constitution:

> "There is control of the whole contract of loading, unloading, work on the dock, on the bridge, and on the ship, and it is the earnest desire of Commissioner Stewart that a bill should cover the contract, cover the job and not simply the man when he is on the ship." (Senate Hearings, page 40).

The "earnest desire" of the Commissioner was not realized. The act as finally passed blended the two traditional bases of admiralty jurisdiction, contract (the existence of the employment relationship) and tort (the situs of the injury), and as to this latter element, the only one at issue in the instant proceedings, adopted the familiar admiralty rule for jurisdiction over torts—occurrence upon navigable waters. The line had to be, and has to be, drawn somewhere. Congress drew it between the land and the navigable waters of the United States.[4] The legislative history of the act clearly shows this to be the case. S.Rep. No. 973, 69th Cong., 1st Sess., at page 16 states:

> "The purpose of this bill is to provide for compensation, in the stead of liability, for a class of employees commonly known as 'longshoremen.' These men are mainly employed in loading, unloading, refitting, and repairing ships; but it should be remarked that *injuries occurring in loading or unloading are not covered unless they occur on the ship or between the wharf and the ship* so as to bring them within the maritime

---

4. Congress did not draw the line as some might argue, as the ludicrous result of using the situs of injury test for coverage, between the thin longshoreman and the fat longshoreman. At the time of the Senate hearings, prior to the enactment of the Longshoremen's Act, an attorney for various interested labor organizations while testifying generally in support of the bill and as to its need noted that if a longshoreman fell while going between the ship and the wharf and hit the wharf, he would be covered under local law, but if he fell between the ship and the wharf he would be denied state compensation and no federal compensation as yet existed. He used as an illustration of the complexities and sometimes the absurdities of jurisdictional problems the case of the fat longshoreman who, in falling, hit both the wharf and the ship (Senate Hearings, pages 29–30). Lines are often difficult to draw but in the enactment of legislation the duty, and indeed the sole authority, to draw the line is that of Congress.

jurisdiction of the United States." (emphasis supplied).

Coverage of injuries occurring on the wharf was advertently omitted. Thus, there is no question but that at least until the enactment of the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C.A. § 740, the Longshoremen's Act was "restricted to compensation for injuries occurring on navigable waters", "exclude[d] from its own terms * * * any remedies against the employer for injuries inflicted on shore", and left "the injured employees in such cases to pursue the remedies afforded by the local law * * *." (Swanson v. Marra Brothers, Inc., 1946, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045).

The Extension of Admiralty Jurisdiction Act of 1948, enacted two years after the Swanson decision, provides in part:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

Certainly the Extension Act does not strike down the distinction previously made by the courts between land injuries and water injuries. Indeed the act expressly recognizes the existence of land injuries as distinguished from injuries occurring on navigable water. But claimants would have this court equate the jurisdictional requirement of the Longshoremen's Act of the occurrence of the injury "upon the navigable waters" with occurrence of the injury within the "admiralty jurisdiction" of the United States as that jurisdiction is spelled out in the Extension of Admiralty Jurisdiction Act above and thus extend coverage of the compensation act to certain shoreside injuries not therefore covered.[5] The Extension Act cannot be so construed. First, it is significant that in enacting the Longshoremen's Act Congress specifically chose the phrase "navigable waters" in preference to the phrase "admiralty jurisdiction". As originally introduced, the Longshoremen's Act contained a provision covering "any employment performed on a place *within the admiralty jurisdiction* of the United States, except employment of local concern and of no direct relation to navigation and commerce". (Hearings on S. 3170, Senate Judiciary Committee, 69th Cong., 1st Sess., page 2; emphasis supplied). After much discussion over the advisability of the "local concern" exception, this exception was omitted and the phrase "navigable waters" substituted for the reference to admiralty jurisdiction. Had Congress considered the two phrases identical there would have been no need for the substitution of one for the other. "The exclusion of on-shore injuries to maritime employees otherwise within the Act may have reflected doubts as to Congressional power, in a statute passed under the Constitutional grant of admiralty jurisdiction, to go beyond the highwater mark, or it may have been a policy decision to leave as much as possible to the State compensation commissions." (Gilmore & Black, The Law of Admiralty, page 339, 1957 Edition).

Secondly, the Extension Act is certainly not an express amendment of the

---

5. Again with reference to the possible inequities arising in the case of the thin longshoreman, possibly covered only by the monetarily less advantageous provisions of a state workmen's compensation act, as distinguished from the fat longshoreman, having recourse to either state or federal coverage, it should be noted that even were the court, in an effort to cure such inequities, to seize upon the Extension Act as a means of extending the coverage of the Longshoremen's Act, a longshoreman who while engaged in the loading or unloading of a vessel suffered injuries on a pier would not be entitled to compensation under the Federal Act unless the court could also spell out that his injury was, in some manner, "caused by a vessel on navigable water." The complete coverage urged by those seeking provisions covering "the contract, cover [ing] the job and not simply the man when he is on the ship" would still not be effectuated.

Longshoremen's Act. It is completely silent as to the Longshoremen's Act. Similarly a contemporaneous amendment of the Longshoremen's Act contains no cross reference to the Extension Act. The Extension Act was enacted on June 19, 1948. On June 24, 1948 Congress enacted Public Law No. 757 (62 Stat. 602)—a bill to increase certain benefits payable under the Longshoremen's Act in view of the increase in wages and cost of living since the original passage of the Act in 1927. Nowhere in the legislative history of this amendment is there any reference to any possible extension of coverage under the Longshoremen's Act by the possible passage of the co-pending Extension Act. (1948 U.S.Code Cong. Serv., Volume 2, pages 1979–1984).

Thirdly, administrative interpretations of the Longshoremen's Act, while of course not controlling, are not without significance. The Bureau of Employees Compensation of the United States Department of Labor which has been charged with administering the Longshoremen's Act since it was passed, has consistently construed it as not applying to injuries occurring upon a wharf. Opinion No. 16, 1927 A.M.C. 1855. The court is advised that the Bureau still construes the Act as not covering injuries which occur wholly upon a wharf.

Fourthly, the Department of Justice which at one point urged that the Extension Act extended the coverage afforded by the Longshoremen's Act has now retreated from that position. In a recent case, Michigan Mutual Liability Company v. Arrien, D.C.S.D.N.Y.1964, 233 F.Supp. 496, the brief submitted in the District Court by the Department of Justice on behalf of the Deputy Commissioner raised the issue of the impact of the Extension Act upon the coverage of the Longshoremen's Act. The District Court accepted the approach urged by the government and found an implication in the enactment of the Extension Act that the coverage of the Longshoremen's Act had been expanded to embrace certain shoreside injuries. The case was appealed. The holding of the United States Court of Appeals for the Second Circuit will be discussed, infra, at page 197, footnote 7. In the appellate brief submitted by the Department of Justice on behalf of the Deputy Commissioner of the Second Compensation District, the government has taken the position that as the accident involved in that case occurred on a "skid", a removable wooden, rectangular platform, approximately 6' by 10' which was attached to the wharf and extended over the navigable waters to the vessel it was an accident occurring upon the navigable waters of the United States and the Department of Justice has abandoned any reliance upon the argument made in the court below that the enactment of the Extension Act had by implication expanded the coverage of the Longshoremen's Act. In its brief submitted in the instant case, the Department of Justice notes that the Longshoremen's Act is not as far reaching "as the burgeoning maritime tort jurisdiction which has been extended shoreward by such laws as the Jones Act and the Extension Act" and, accordingly concludes that "whatever incursions onto the land may have been permitted by specific legislation or case law, any attempt in the instant case to conform artificially the phrase 'upon the navigable waters of the United States' to fit land injuries such as those with reference to piers, wharves, etc. would be to sanction judicial legislation. A new meaning would have to be given to the quoted phrase." (Memorandum submitted by the Department of Justice on behalf of respondent Deputy Commissioner, page 9).

Fifthly, in House Report No. 2287, dated July 28, 1958, submitted some ten years after the enactment of the Extension of Admiralty Jurisdiction Act of 1948, the Congressional understanding that injuries upon wharves and other extensions of land are not within the coverage of the Longshoremen's Act was evidenced by the following comment:

"The Longshoremen's and Harbor Workers' Compensation Act (44

Stat. 1424; 33 U.S.C. 901 et seq.), provides compensation for injuries suffered by longshoremen, ship repairmen, ship servicemen, and workers in related employment when they are working for private employers within the Federal maritime jurisdiction *on the navigable waters of the United States,* including drydocks. *These employees are subject to the protection of State safety standards when performing work on docks and in other shore areas.*

\* \* \* \* \* \*

"The Longshoremen's and Harbor Workers' Compensation Act was passed in 1927 as a result of Supreme Court decisions holding that the States could not apply their workmen's compensation laws in an area which was exclusively maritime and that Congress could not lawfully delegate this authority. Amendments to improve the compensation features of the act and bring it up to date have been made in subsequent years. However, the act has never been amended to authorize the establishment of an effective safety program." (1958 U.S.Code Cong. and Adm.News, Volume 2, pages 3844–3845; emphasis supplied).

■ Thus, there is no indication in any of the legislative history pertaining to the Longshoremen's Act either before, at the time of, or after the passage of the Extension Act that the Extension Act was intended in any way to affect the scope of coverage of the Longshoremen's Act. The administrative interpretations by the Department of Labor of the Longshoremen's Act and the construction presently given that act by the Department of Justice do not support a conclusion that the Extension Act was meant to have any, or had any, impact upon the Longshoremen's Act. Even Judge Edmund L. Palmieri in Michigan Mutual Liability Company v. Arrien, D.C.S.D.N.Y.1964, 233 F.Supp. 496, 501, although finding the Extension Act "illuminating" as to the proper construction to be given to the words "upon the navi-

gable waters" as used in the Longshoremen's Act, noted that the Extension Act "was not an express amendment of the Longshoremen's Act." What claimants then in effect are asking this court to do, advancing arguments almost identical to those urged in 1927 upon Congress (and rejected by it) to the effect that the Longshoremen's Act "should cover the contract, cover the job and not simply the man when he is on the ship", is to hold that the Extension Act sub silentio by implication repealed in 1948 the coverage provisions of the Longshoremen's Act, twenty-one years after its original enactment, and re-enacted the coverage provisions with amendments so as to extend coverage to certain shoreside injuries not previously embraced within the Longshoremen's Act. To so hold would be but the grossest type of judicial legislation, an activity in which this court is not authorized to, and in any event declines to, engage.

■ The legislative history of the Extension Act itself makes it abundantly clear that Congress in drafting the Extension Act was merely extending the traditional admiralty jurisdiction to include damage occasioned by a vessel situated on navigable waters to person or property situated upon land, such causes of action theretofore having been maintainable only on the common law side. The bill did not attempt to, nor intend to, create new causes of action. House Report No. 1523 describes the effects of the bill as follows:

"Under existing law, admiralty and maritime jurisdiction in respect of claims arising out of maritime torts is extended by the United States courts to only those cases where injury is done upon navigable waters, and not to those where injury is done to persons or property situated upon land, even though the injury is caused by a vessel situated on navigable waters. For example, if a bridge or pier, or any person or property situated thereon, is injured by a vessel, the admiralty courts of the United States do not

entertain the claim for the damages thus caused. Cleveland Terminal & Valley R. R. Co. v. Cleveland S.S. Co. (208 U.S. 316 [28 S.Ct. 414, 52 L.Ed. 508]); The Troy (208 U.S. 321 [28 S.Ct. 416, 52 L.Ed. 512]); Martin v. West (222 U.S. 191 [32 S.Ct. 42, 56 L.Ed. 159]). The bill under consideration would provide for the exercise of admiralty and maritime jurisdiction in all cases of the type above indicated.

"As a result of the denial of admiralty jurisdiction in cases where injury is done on land, when a vessel collides with a bridge through mutual fault and both are damaged, under existing law the owner of the bridge, being denied a remedy in admiralty, is barred by contributory negligence from any recovery in an action at law. But the owner of the vessel may by a suit in admiralty recover half damages from the bridge, contributory negligence operating merely to reduce the recovery. Further, where a collision between a vessel and a land structure is caused by the fault of a compulsory pilot, the owner of the land structure is without remedy for his injuries since at law a compulsory pilot is not deemed the servant of the vessel's master or owner. Homer Ramsdell Transportation Co. v. La Compagnie Générale Transatlantique (182 U.S. 406, 416 [21 S.Ct. 831, 45 L.Ed. 1155]). But if the vessel sheers off the land structure to collide with another vessel in the vicinity, the owner of the second vessel, by an in rem proceeding in admiralty, may recover full damages, for the wrong is viewed as that of the vessel itself and compulsory pilotage is no defense. The China ([7 Wall. 53, 68] 74 U.S. 53, 68 [19 L.Ed. 67]). The bill under consideration would correct these inequities as a result of providing that the admiralty courts shall take cognizance of all of them.

"The bill will bring United States practice respecting maritime torts into accord with that followed by the British, who by a series of statutes, beginning in 1840, have restored admiralty jurisdiction in situations of this character and brought the British law into harmony with that of most European countries.

\*　　\*　　\*　　\*　　\*

"Adoption of the bill will not create new causes of action." (1948 U.S.Code Cong.Serv., Volume 2, pages 1899, 1900).

The legislative history of the Extension Act does not suggest but rather strongly negates any intention on the part of Congress to repeal and then re-enact with amendments the coverage provisions of the Longshoremen's Act. As shown by this history, quoted in part above, the Extension Act was passed to cure inequities arising when a vessel on navigable waters caused damage or injury on land. This statement is made by the court with full awareness that the Supreme Court of the United States has found nothing in the legislative history of the Extension Act to require that the language of the statute itself be given too restrictive an interpretation. (Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L. Ed.2d 297).

Turning next to the express wording of the Extension Act itself, it can be seen that the wording of that enactment is peculiarly inapplicable to a bill extending coverage under a workmen's compensation act. The Extension Act, Title 46, U.S.C.A., § 740, provides:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

Most significantly, the statute then continues:

> "In any such case suit may be brought in rem or in personam according to the principles of law and the rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water."

What then has Congress said? To paraphrase the second paragraph of the statute quoted above—in any case where the admiralty jurisdiction of the United States has been extended to a land injury to person or *property*, suit to recover damages may be brought in rem or in personam according to the principles of law and rules of practice applicable if the injury or damage had occurred on navigable waters. Damage to property is never the subject matter of a workmen's compensation act. A proceeding before the Deputy Commissioner under the Longshoremen's Act is not a suit. A suit is not brought but rather the Act provides for a claim to be filed. The proceeding is not one in rem or in personam. It is an administrative proceeding commenced with the filing of a claim with an administrative officer, it is conducted in accordance with administrative principles and rules and it terminates not in a judgment enforceable in rem or in personam but terminates with the rendering of an administrative order rejecting the claim or making an award. The Extension Act clearly contemplates the extension of admiralty jurisdiction over a suit based on tort liability to recover damages. The Longshoremen's Act on the contrary sets up an administrative proceeding to obtain compensation without regard to tortious conduct, and with no provision for reduction of "damages" for contributory or comparative negligence. The two statutes do not deal with the same subject matter, are inherently inconsistent with each other, and cannot be read as being in pari materia. The court finds nothing within the four corners of the Extension Act itself to indicate any Congressional intent to amend the jurisdictional test of the occurrence of an injury upon the navigable waters of the United States as that requirement specifically appears within the coverage provisions of the Longshoremen's Act. Indeed the wording of the Extension Act is peculiarly inapplicable to any situation involving an injury to be compensated for by way of a workmen's compensation act.

The decisions rendered since the enactment of the Extension Act merit discussion but lead to no different conclusion. Cases, upon which claimants rely, pertaining to Jones Act (46 U.S.C.A. § 688) liability are not in point for the responsibility of the employer to his seaman-employee thereunder is not circumscribed by any jurisdictional requirement that the situs of the injury be upon the water. The sole jurisdictional requirement is injury in the course of a seaman's employment. Similarly, cases of unseaworthiness liability for land injuries are inapposite for as succinctly pointed out by the Supreme Court of the United States in Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 214, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297, allowing recovery to a longshoreman against a vessel for injuries incurred on land and caused by the ship's unseaworthiness, "the tort of unseaworthiness arises out of a maritime status or relation and is therefore 'cognizable by the maritime [substantive] law whether it arises on sea or on land' [Strika v. Netherlands Ministry of Traffic, 2 Cir. 1950, 185 F.2d 555, 558]." Since the cause of action in unseaworthiness arises under the general maritime law and not under a specific enactment such as the Longshoremen's Act, the general admiralty and maritime jurisdictional provisions are controlling and the Extension Act accordingly comes into play. Finally, cases concerned with a seaman's maintenance and cure should be distinguished from cases arising under the Longshoremen's Act, for liability for the care of a seaman is independent of the situs of the injury and is instead a liability depending upon and arising out

of the contractual relationship between the parties.

Aside from these totally inapplicable cases, claimants urge upon the court that the following broad and general language appearing in Calbeck v. Travelers Insurance Co., 1962, 370 U.S. 114, 124, 82 S.Ct. 1196, 1202, 8 L.Ed.2d 368, indicates that the coverage of the Longshoremen's Act may, and indeed must, be extended by judicial interpretation to land injuries:

\*　\*　\*　\*　\*　\*

"In sum, it appears that the Longshoremen's Act was designed to ensure that a compensation remedy existed for all injuries *sustained* by employees *on navigable waters,* and to avoid uncertainty as to the source, state or federal, of that remedy. Section 3(a) should, then, be construed to achieve these purposes. Plainly, the Court of Appeals' interpretation, fixing the boundaries of federal coverage where the outer limits of state competence had been left by the pre-1927 constitutional decisions, does not achieve them."

(Emphasis supplied).

No support for claimants' position may be found in this excerpt and, indeed, the case as a whole is squarely against claimants. First, the quotation above contains the specific jurisdictional language "on navigable waters". Secondly, the term "on navigable waters" as the sine qua non of jurisdiction is used in the opinion at least eleven times.[6] Thirdly, it should be noted that under the facts of the Calbeck case the injuries indisputably occurred on navigable waters. The sole issue before the court was whether or not a court-made distinction (having been made prior to the passage of the Longshoremen's Act) that state compensation statutes could constitutionally be applied to employees engaged in the completion of a launched vessel under construction on navigable waters but could not constitutionally be applied to employees engaged in repair work on completed vessels on navigable waters was still valid after passage of the act so as to exempt from federal coverage employes engaged in construction as distinguished from repair work. The Supreme Court held that such judge-made law was not in accord with the intent evidenced by Congress's enactment of the Longshoremen's Act to extend coverage to all injuries sustained on navigable waters. The Supreme Court did not say that by judicial legislation the courts may amend the express jurisdictional requirements of the Longshoremen's Act.

There have been several cases in which the question of the effect of the Extension Act upon the Longshoremen's Act has been raised. In Gladden v. Stockard Steamship Company, 3 Cir. 1950, 184 F.2d 510, the court took the position that it was not necessary for it to consider and rule upon the issue, stating that the result as far as the plaintiff was concerned would be the same were the tort considered a maritime tort or a terrestrial tort as the plaintiff's action against the decedent's employer would be barred by the "exclusive" remedy provision of the Longshoremen's Act were the tort maritime or by the "exclusive" remedy provision of the state workmen's compensation act were it a terrestrial tort. In Interlake Steamship Company v. Nielsen, 6 Cir. 1964, 338 F.2d 879, 882, the court, recognizing that the Extension Act "obviously was not designed directly to affect the Longshoremen's and Harbor Workers' Compensation Act", felt that the Extension Act and the trend of case law "all pointed in the direction of expanding the boundaries of admiralty jurisdiction toward land." The court then proceeded specifically to hold that a claimant killed by physically coming into contact with frozen navigable waters by breaking his skull on such waters suffered an injury occurring "on the navigable waters of the United States" and thus his death was compensable under the Longshoremen's Act. This case is cer-

6. See pages: 115, 116 (twice) 117, 119, 120, 124, 125, 126, 129 (twice).

tainly not authority for the proposition that a land injury is compensable under the Longshoremen's Act. Judge Harrison L. Winter of this court has likewise recognized the tendency to expand admiralty jurisdiction and in so doing has specifically noted the Calbeck case and the Extension Act. Again his specific holding was that the injury occurred upon navigable waters.

"I do not have any question in my mind but that this accident did occur upon navigable waters of the United States in the sense that the decedent was on the GUAM, which was, although run aground, in the Patapsco River and the Patapsco River is admittedly navigable." (Boston Metals Company v. O'Hearne, D.C.D.Md.1963, Admiralty No. 4412—oral opinion).

On Appeal, the United States Court of Appeals for the Fourth Circuit affirmed stating "since Harris received his injuries on navigable waters, we agree with the District Judge that Calbeck is controlling in this case." (Boston Metals Company v. O'Hearne, 4 Cir. 1964, 329 F.2d 504, 507).

The effect, if any, of the Extension Act upon the Longshoremen's Act where the injury occurred upon a dock or pier, as distinguished from an injury occurring upon navigable waters, was raised and was considered in Atlantic Stevedoring Company v. O'Keeffe, D.C.S.D. Ga.1963, 220 F.Supp. 881, 885, where the court after a careful study of the two acts and their respective legislative histories, stated:

"I find nothing to lead me to the conclusion that Congress intended by the Admiralty Extension Act to broaden and enlarge the jurisdiction of the Longshoremen's and Harbor Workers' Act, and I do not believe such jurisdiction can, or should be, extended by implication."

Judge Walter E. Hoffman in Revel v. American Export Lines, D.C.E.D.Va. 1958, 162 F.Supp. 279, 283–284, (likewise a pier case) after a careful analysis of the issues involved, concluded:

" * * * To oust state compensation acts from an established and important area of coverage by reason of the passage of the Extension in Admiralty Act, which makes no reference to the field of compensation law, would create a situation in which a longshoreman, such as the plaintiff herein, would not be covered by any workmen's compensation act, state or federal, as the federal act covers only those injuries occurring 'upon the navigable waters', 33 U.S. C.A. § 903(a), and it is established that injuries suffered on piers or docks (as opposed to drydocks) are not included. It can hardly be said that the Extension in Admiralty Act was also intended to amend the federal compensation act to include injuries occurring on land as well as 'upon the navigable waters', and this is especially true when the Supreme Court has said, 'Congress made clear its purpose to permit state compensation protection wherever possible'. Davis v. Department of Labor and Industries, 317 U.S. 249, 252, 63 S.Ct. 225, 227, 87 L.Ed. 246. See also United States Casualty Co. v. Taylor, 4 Cir., 64 F.2d 521, 524; Travelers Ins. Co. v. McManigal, 4 Cir., 139 F.2d 949, 951; both opinions by Judge Soper, cf. Gladden v. Stockard S.S. Co., 3 Cir., 184 F.2d 510."

On appeal, the United States Court of Appeals for the Fourth Circuit in effect affirmed Judge Hoffman, saying:

\* \* \* \* \* \*

"Since Revel was injured while standing on the dock, (an extension of the land) his remedies are restricted to those afforded by the local law. Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; State Industrial Comm. v. Nordenholt Corp., 1922, 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933; Cf. The Longshoremen's and Harbor

Workers' Compensation Act, 33 U.S.C.A. § 903 and Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. *This is true even though the Congress has embraced such cases within the maritime jurisdiction of the United States.* Extension of Admiralty Act, 46 U.S.C.A. § 740." (American Export Lines, Inc. v. Revel, 4 Cir. 1959, 266 F.2d 82, 84; emphasis supplied).

■ This court is in complete accord with the conclusion that, although certain types of land injuries have, by the enactment of the Extension Act, been embraced within the admiralty and maritime jurisdiction of the United States, the specific jurisdictional requirement of the Longshoremen's and Harbor Workers' Compensation Act that to come within the latter act the injury must occur upon the navigable waters of the United States has not been repealed and re-enacted with amendments by implication through the passage of the Extension Act. However, even were this court not in agreement [7] with the pronouncement of the United States Court of Appeals for the Fourth Circuit, it would consider itself bound by the excerpt quoted above.

Accordingly, this court holds that the compensation order denying compensation benefits and complained of in Admiralty No. 4704, and the compensation order denying compensation benefits and complained of in Admiralty No. 4705, are in accordance with the law. Judgment is hereby entered in favor of the respondent Deputy Commissioner in both of the aforesaid cases and the complaints in both cases are hereby dismissed without costs.

7. Although having high regard for its author, the one reported case known to this court, and previously discussed (Michigan Mutual Liability Company v. Arrien, D.C. S.D.N.Y.1964, 233 F.Supp. 496), equating "upon the navigable waters of the United States" with "admiralty jurisdiction" due to the "illumination" by implication of the Extension Act is completely unpersuasive to this court both in its reasoning and because of its failure to consider and meet the factors relied upon and found controlling in the earlier "pier" cases ruling on this issue, namely, the Atlantic Stevedoring Company case and the Revel case, excerpts of which have been quoted just previously in the text above. In addition it should be noted that the Michigan Mutual case was not a pier case. The injury occurred upon a removable staging or skid, a situation which the deputy commissioner in effect found to be, and which the Department of Justice now urges is, comparable to a gangplank or ladder situation. An injury upon a gangplank or ladder has long been held to be within the coverage of the Longshoremen's Act. (Ford v. Parker, D.C.D.Md. 1943, 52 F.Supp. 98, an opinion by the late Judge W. Calvin Chesnut).

Since this opinion was drafted the United States Court of Appeals for the Second Circuit has held the injury in the Michigan Mutual case compensable under the Longshoremen's Act on the ground that the skid more closely resembled a gangway than a pier, thus retaining and applying the established distinction between injuries occurring upon navigable waters and injuries occurring upon extensions of land such as piers or wharves. The Second Circuit rejected rather than adopted the lower court's equation of "upon navigable waters" with "admiralty jurisdiction". (Michigan Mutual Liability Co. v. Arrien, 2 Cir. 1965, 344 F.2d 640, 645—footnote 3). Circuit Judge Paul R. Hays, dissenting on another ground, specifically noted that "[w]hen Congress adopted the Admiralty Extension Act it had an opportunity to expand federal compensation to cover all longshoremen's injuries caused in loading and unloading vessels. Congress did not take advantage of that opportunity." (344 F.2d 640, 648–649).