Gaetano DI PAOLA, Plaintiff,

v.

INTERNATIONAL TERMINAL OPER-
ATING CO., Inc., Dominican Steamship
Line, Brodin Line and Daido Line, De-
fendants,

INTERNATIONAL TERMINAL OPER-
ATING CO., Inc., Rederiaktiebolaget
Disa, Rederiaktiebolaget Poseidon, Ak-
tiebolaget Svenska Orient Linien, and
Japan Line, Ltd., Third-Party Plaintiffs,

v.

PIER 8 TERMINALS, INC., Third-Party
Defendant.

No. 64 Civ. 1008.

United States District Court
S. D. New York.

Dec. 23, 1968.

Sylvia Miller, New York City, for plaintiff.

Fogarty & Nielsen, New York City, for defendant, International Terminal Operating Co., Inc.

MANSFIELD, District Judge.

In this action by a pier worker to recover damages for personal injuries, defendant International Terminal Operating Co., Inc. ("ITO") has moved pursuant to Rule 56(b), F.R.Civ.P., for summary judgment dismissing the complaint on the ground that the Court lacks subject matter jurisdiction.

■ The complaint originally based jurisdiction on diversity of citizenship, but during a pretrial conference it became apparent that the Court lacked diversity jurisdiction. As a result, the parties stipulated in the pretrial order that plaintiff's complaint be deemed amended "to include a statement that the matters and things therein alleged set forth a claim for relief within the Admiralty and Maritime jurisdiction of this Court within the meaning of Rule 9(h), F.R.C.P." Defendant ITO did not, by this stipulation, waive its right to raise its current objection to this Court's jurisdiction. See Nakken v. Fearnley & Eger, 137 F.Supp. 288, 290 (S.D.N.Y.1956).

The facts necessary to decide this motion are not in dispute. On September 20, 1963, plaintiff, who was employed as a cooper by Pier 8 Terminals, Inc., was performing his duties, which consisted of sweeping up any coffee that may have spilled from coffee bags stored on the pier and sewing up the torn bags, when some coffee bags stacked on the pier fell, striking and injuring him. These bags had been unloaded from the motor vessel Lia by ITO, either in the late afternoon of September 17, 1963 or in the morning of September 18, 1963, pursuant to a stevedoring contract containing the normal warranties requiring the stevedore to perform its work in a safe and workmanlike manner. It was ITO's job to take cargo off all of the vessels that berthed at the Pier 8 Terminal, and the particular bags in question had been placed in a net sling and removed from the Lia by the use of the ship's winch. They were placed on the string piece on the north side of the pier and then removed from the sling net and placed on pallets. Employees of ITO then took these pallets inside the covered portion of the pier and tiered them. It is plaintiff's contention that the accident was caused by the negligent tiering of these pallets and coffee bags.

Plaintiff urges that maritime jurisdiction is present either because his injuries were the result of maritime tort, or because they were caused by ITO's breach of warranty under a maritime contract.

*The "Maritime Tort" Theory*

■■ Neither the vessel nor its crew is, for the purposes of this motion, alleged to have been the direct cause of plaintiff's injuries. The allegedly negligent tiering was performed by longshoremen employed by the stevedore,

ITO. Admiralty jurisdiction, however, does not depend on who committed the tort, but on where the tort was committed. Atlantic Transport Co. of West Virginia v. Imbrovek, 234 U.S. 52, 34 S. Ct. 733, 58 L.Ed. 1208 (1914). Traditionally "the civil jurisdiction of the admiralty in matter of tort depend[ed] upon * * * whether the act was committed under navigable waters— * * * *". North Pac. S. S. Co. v. Hall Bros. Marine Railway & Shipbuilding Co., 249 U.S. 119, 125, 39 S.Ct. 221, 222, 63 L.Ed. 510 (1918). As plaintiff in the instant case was injured while working on a pier, which would be considered an extension of land, see Wiper v. Great Lakes Engineering Works, 340 F.2d 727, 730 (6th Cir. 1965), this Court, under the traditional rules of admiralty jurisdiction which required both the tort and the injury to occur on navigable waters, would have been required to dismiss plaintiff's contention that the alleged negligent storage of the coffee bags and his resulting injury satisfy the requisites of admiralty jurisdiction. The area embraced by maritime tort jurisdiction, however, has been substantially extended both through judicial decision and Act of Congress. The Supreme Court has held that admiralty jurisdiction exists when "it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act", Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1962). *Gutierrez* involved a longshoreman who, while unloading a cargo of broken and defective bags containing beans, slipped on some loose beans which were spilled on the dock during the unloading process. The Supreme Court stated the facts of the case, as found by the District Court, as follows:

"The cargo of beans was packed in broken and defective bags, some of which were being repaired by coopers aboard the ship during unloading. Beans spilled out of the bags during unloading, including some from one bag which broke open during unloading, and the scattering of beans about the surface of the pier created a dangerous condition for the longshoremen who had to work there. The shipowner knew or should have known that injury was likely to result to persons who would have to work around the beans spilled from the defective bags, and it was negligent in allowing cargo so poorly stowed or laden to be unloaded. Petitioner fell on the beans and injured himself, and such injuries were proximately caused by the respondent's negligence and the unseaworthiness of its cargo or cargo containers." (373 U.S. at 207, 83 S.Ct. at 1187)

On these facts the Court found the case to be within the maritime jurisdiction. The tortious act occurred "while or before" the ship was being unloaded. In fact it was part of the continuous and uninterrupted unloading process, directly connected with conduct aboard the ship; and its impact was felt at a time and place not remote from the wrongful act.

In the present case plaintiff does not contend that the tort occurred "while or before" the ship was being unloaded. The tort alleged in paragraph 18 of the complaint is that the cargo was negligently stored on the pier after the unloading of it had been completed. Nor does plaintiff allege that the tort occurred while the bags were removed from the ship, or even from the string piece to the covered portion of the pier. Not until after the bags had been unloaded from the ship to the string piece on the pier, where they came to rest, and then removed from the sling net and transported to the covered portion of the pier and stored, does plaintiff point to carelessness on the part of defendant that caused plaintiff's injury. While jurisdiction need not be limited to a case where "its defective winch drops some cargo onto a longshoreman", Gutierrez v. Waterman S. S. Corp., supra, 209–210, 83 S.Ct. at 1188, plaintiff here asks us

to extend the *Gutierrez* doctrine beyond that or any other case decided. In all prior cases the accident occurred during the integrated process of unloading and removing cargo from a ship's hold and lowering it to rest on a pier. In *Gutierrez*, for instance, there was a definite relationship between the accident and acts which occurred aboard the vessel. Indeed the facts in *Gutierrez* make clear that the carelessness leading to the accident originated aboard ship prior to unloading, for the bags were defective before they were transferred from the ship to the pier and it was foreseeable that permitting them to be unloaded prior to repair by the coopers working aboard ship would result in their contents being spilled upon the dock. In the present case the relationship between the vessel on navigable waters and the alleged careless act is either nonexistent or remote at best.

Maritime jurisdiction must also be denied here on another ground. In all cases where an injury to a longshoreman on land has given rise to admiralty jurisdiction not only was the ship being actively unloaded at the time of the accident but the injured plaintiff's actions at the time of the accident "were direct, necessary steps in the physical transfer". Litwinowicz v. Weyerhaeuser Steamship Co., 179 F.Supp. 812, 817 (E.D.Pa.1959). See also, Strika v. Netherlands Ministry of Traffic, 185 F. 2d 555 (2d Cir. 1950); Hagans v. Farrell Lines, 237 F.2d 477 (3d Cir. 1956). In contrast, plaintiff's activities here had nothing to do with the unloading of the ship. He was no more related to the unloading process than was the cargo checker to whom the court denied admiralty jurisdiction in LiMandri v. Brasileiro, 316 F.2d 3, 5 (2d Cir. 1963), on the ground that he was not performing "ship's service". Finally, not only were the storage of the cargo and plaintiff's activities distinct steps away from the active unloading of the ship, but the injury occurred three to four days after the unloading and storage. *Gutierrez* requires that the impact of the tort be felt at a time "not remote from the wrongful act", Gutierrez, supra, 373 U. S. 210, 83 S.Ct. at 1188.

In summary, the mere fact that the plaintiff is a longshoreman injured by goods that have at some time past been unloaded from a ship is not enough. The jurisdictional elastic, supple as it is, cannot be stretched on forever. There comes a point where a halt must be called, whether or not the accident be characterized as too "remote", "distant", "unconnected", or the like. Viewing the totality of circumstances (as presented in the parties' affidavits) we believe that point has been passed here. The combination of an alleged wrongful act only tenuously related to a vessel, an injury to one not performing seamen's tasks, and an impact not felt until three to four days after the alleged wrongful act, render the case ineligible to meet the jurisdictional requisites of *Gutierrez*. It should be further noted that while the Supreme Court in *Gutierrez* was dealing with a claim of unseaworthiness, which is uniquely a creature of maritime law, here plaintiff's injuries did not arise out of any such maritime status or relation cognizable by substantive maritime law. On the contrary, his claim is essentially one based on common law negligence. See, e. g., Burns v. Cunard Steamship Co., 404 F.2d 60 (2d Cir. 1968) (decided December 4, 1968).

The 1948 extension of the Admiralty Act, 46 U.S.C. § 740, does not require that admiralty take jurisdiction over this matter. That Act reads:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

Although the Supreme Court in *Gutierrez* relied in part on this statute to reach its result, its reliance was unnecessary. Prior to the Act admiralty jurisdiction had been expanding to cover land injuries that were the result of

torts committed during the process of unloading vessels on navigable waters. See, Strika v. Netherlands Ministry of Traffic, 185 F.2d 555, 558 (2d Cir. 1959). Further, the legislative history of that Act indicates that its major purpose was not to extend admiralty jurisdiction in cases such as the one before the Court on this motion, but to overrule prior Supreme Court decisions which had denied owners of shoreline property injured by vessels the right "to take advantage of maritime rules as to liability and contribution". Note, 64 Harv.L. Rev. 996, 997 (1951). See also, 2 U.S. Code Cong.Serv. p. 1899 et seq. (1948); Fematt v. City of Los Angeles, Cal., 196 F.Supp. 89, 91 (1961); Johnson v. Traynor, 243 F.Supp. 184 (1965).

*The "Maritime Contract" Theory*

Plaintiff also contends that this Court has admiralty jurisdiction over this matter because of the existence of a stevedoring contract between defendant stevedoring company, ITO, and the shipper. That contract contained the normal warranty that the stevedore would perform its work in a safe and workmanlike manner. Plaintiff argues that the negligent storage was a breach of this warranty in a maritime contract and that since plaintiff was injured as a consequence of this breach this Court has admiralty jurisdiction over the matter. In support of his contention plaintiff relies on Sanderlin v. Old Dominion Stevedoring Corporation, 385 F.2d 79 (4th Cir. 1967).

*Sanderlin* involved an injury to a cargo checker employed by a shipowner, States Marine-Isthmian Agency, Incorporated ("SMI"). While performing his duties on the pier the checker was struck by a forklift tow motor which was being negligently operated by an employee of the stevedoring company under contract to service one of SMI's vessels. That contract contained an express warranty by the stevedore to perform its duties in a safe and workmanlike manner, and the suit by SMI's employee was based on a breach of that warranty. The *Sanderlin* court found that the contract was maritime in na-

ture and held that the shipowner's employee was a beneficiary of that warranty, and therefore his suit based on the warranty was cognizable by admiralty.

■ There is no question that the stevedoring contract in the instant case is maritime in nature. And since admiralty jurisdiction, when founded upon contract, "depends upon the subject-matter—the nature and character of the contract", North Pac. S. S. Co. v. Hall Bros. Marine Railway & Shipbuilding Co., 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919), such jurisdiction would be available to a party authorized to sue upon the contract. But more than the mere existence of a maritime contract must be shown. Plaintiff must also show some right to sue upon the contract. Wiper v. Great Lakes Engineering Works, 340 F.2d 727, 730 (6th Cir. 1965); Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555, 559 (D.Md.1965). This case raises the novel question of whether the former requirement of privity of contract has been eroded so substantially as to permit an employee of one corporation (Pier 8 Terminals, Inc.) to sue under a contract between two other entities; ITO, a stevedoring concern, and a steamship company.

■■ Lack of privity is not necessarily a bar to suits by all non-parties to maritime contracts. In Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), a shipowner held liable to an injured stevedore sought indemnification against the stevedoring company for breach of its warranty of workmanlike service. The stevedoring company had entered into the stevedoring contract with the ship's time charterer but not with the shipowner, and consequently no contractual relationship existed between the shipowner and the stevedoring concern. Recognizing that the warranty was intended for the benefit of the ship, regardless of the immediate parties to the contract, the Supreme Court held:

"The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the

benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third party beneficiaries." Crumady v. The J. H. Fisser, 358 U.S. 423, 428, 79 S.Ct. 445, 448 (1958).

See also, Waterman S. S. Co. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); DeGioia v. Unitde States Lines Company, 304 F.2d 421 (2d Cir. 1962).

■ Thus, although "the zone of responsibility may extend beyond those in direct contractual relationship", DeGioia v. United States Lines Company, 304 F. 2d 421, 425 (2d Cir. 1962), it cannot be divorced from the purpose and policy behind the warranty, which is to protect the shipowner's right of indemnification. DeGioia, supra, explains the parallel and commensurate nature of the two analogous doctrines as follows:

> "The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by *shipboard* injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved. * * * The scope of the stevedore's warranty of workmanlike performance is to be measured by the relationship which it brings into being. Since the shipowner here was held liable for injuries the jury found were the foreseeable result of the stevedores' failure to perform in a workmanlike fashion, it may recover indemnification, whether it was strictly a 'third party beneficiary' or not." (*DeGioia,* supra, 426, emphasis added)

See also, Schwartz v. Compagnie General Transatlantique, 405 F.2d 270 (2d Cir. 1968) (decided December 11, 1968), where the Second Circuit recently said:

> "This warranty doctrine is one of several special rules developed to further a policy of both minimizing accidents to seamen and stevedores which arise out of the hazards of their *shipboard* occupation and compensating those workers who do fall victim to these accidents." (emphasis added)

Sanderlin v. Old Dominion Stevedoring Corporation, 385 F.2d 79 (4th Cir. 1967), relied upon by plaintiff here, extended the zone of responsibility to find admiralty jurisdiction in a case where indemnification was not in issue and where it was assumed that jurisdiction based on a maritime tort theory was lacking. In doing this the Fourth Circuit was guided "primarily by the rationale Seas Shipping Co. v. Sieracki, 328 U.S. 878 [66 S.Ct. 1116, 90 L.Ed. 1646] (1946), which extended an analogous maritime warranty, and by the trend of the recent products' liability case law in this country." *Sanderlin,* supra, 82. The *Seas Shipping* case extended a shipowner's obligation of seaworthiness to stevedores performing tasks formerly performed by seamen. The court reasoned that a shipowner should not escape liability simply by contracting out his work to persons not members of his crew. The case corrected an anomaly in the law which denied a legal right to stevedores, not because their work was different from that of crew members, but simply because they were employed by persons other than shipowners. Furthermore, the effect was to place the risk of loss directly on the party best able to bear it and reduce needless circuitry in litigation that so often results when a plaintiff cannot directly sue the party ultimately responsible for his injury. Substantially the same policies have led to the gradual disappearance of the privity requirement from products' liability cases. See, Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N. Y.S.2d 363, 181 N.E.2d 399 (1962).

■ There are, however, material differences between the present case and *Sanderlin* that render the latter inapplicable. In *Sanderlin* the plaintiff was an employee of a corporation clearly entitled to the court's admiralty jurisdiction on the basis of its maritime contract.

The contracting parties' employees were intended beneficiaries of the warranties contained in that contract and therefore were properly afforded the admiralty jurisdiction of federal courts. In the instant case, however, plaintiff's employer was not a party to the contract in question and was not performing tasks normally delegated to employees of either of the contracting parties. Plaintiff does not lie within the zone of responsibility contemplated either by defendant's contract or implied obligations arising out of the nature of its activities. Furthermore, plaintiff here has a direct and complete remedy in the state court. The availability of such a remedy renders it unnecessary to create an artificial maritime beneficiary status as a means of expanding admiralty jurisdiction. No anomalies or burdensome procedural difficulties are here presented of the type found in *Sanderlin*.

The Court lacking jurisdiction under both the maritime tort and maritime contract theory, defendant's motion for summary judgment dismissing the complaint is granted.

It is so ordered.