Gaetano DiPAOLA, Plaintiff-Appellant,

v.

INTERNATIONAL TERMINAL OPERATING CO., Inc., Dominican Steamship Line, Brodin Line and Daido Line, Defendants-Appellees,

and

INTERNATIONAL TERMINAL OPERATING CO., Inc., Third-Party Plaintiff-Appellee,

and

Rederiaktiebolaget Disa, Rederiaktiebolaget, Poseidon, Aktiebolaget Svenska Orient Linien and Japan Line, Ltd., Third-Party Plaintiffs-Appellants-Appellees,

v.

PIER 8 TERMINALS, INC., Third-Party Defendant-Appellee.

Nos. 166, 167, Dockets 33322, 33384.

United States Court of Appeals
Second Circuit.

Argued Oct. 28, 1969.

Decided Nov. 25, 1969.

Chester A. Hahn, New York City (Sylvia Miller, New York City, on the brief), for plaintiff-appellant.

Tidal B. Henry, New York City (Fogarty and Nielsen, New York City, on the brief), for defendant-appellee, International Terminal Operating Co., Inc.

David P. H. Watson, New York City (Haight, Gardner, Poor & Havens, New York City, on the brief), for defendants-appellees Rederiaktiebolaget Disa, Rederiaktiebolaget Poseidon and Aktiebolaget Svenska Orient Linien, sued herein as Brodin Line, and third-party plaintiffs-appellants Rederiaktiebolaget Disa, Rederiaktiebolaget Poseidon and Aktiebolaget Svenska Orient Linien.

Daniel J. Dougherty, New York City (Kirlin, Campbell & Keating, New York City, on the brief), for Japan Line, Ltd. (formerly Daido Line), defendant and third-party plaintiff-appellee-appellant.

Before LUMBARD, Chief Judge, and MEDINA and FEINBERG, Circuit Judges.

PER CURIAM:

■ DiPaola, an employee of third-party defendant Pier 8 Terminals, Inc. ("Pier 8"), brought this suit in admiralty for damages to compensate him for injuries suffered on September 20, 1963, when some stacked bags of coffee fell upon him while he was sweeping the floor of a warehouse on the pier where the bags were stored after being unloaded from the motor vessel *Lia* on either September 17 or 18, 1963. Judge Mansfield granted a motion for summary judgment by defendant International Terminal Operating Co., Inc. ("I.T.O."), on the ground that there was no federal jurisdiction under any of the theories advanced by plaintiff.[1]

■ The record before us indicates that I.T.O. actually unloaded the ship and stacked the bags of coffee. In the briefs on appeal and at oral argument, it came to our attention that Judge Mansfield's opinion and order granting the motion for summary judgment, reported at 294 F.Supp. 736 (S.D.N.Y.1968), proceeds on the assumption that plaintiff was claiming to be a third-party beneficiary of a written contract between I.T.O. and Brodin Line, the shipper which operated the *Lia*. From statements by counsel upon argument of the appeal, it appears that plaintiff's employer, Pier 8, had the stevedoring contract with Brodin Line. However, the unloading work by I.T.O. was presumably done pursuant

---

1. DiPaola's original action was predicated on diversity of citizenship. However, it soon developed that both I.T.O. and DiPaola resided in New York, and the parties stipulated in a pretrial order that DiPaola's complaint would be deemed amended "to include a statement that the matters and things therein alleged set forth a claim for relief within the Admiralty and Maritime jurisdiction of this Court within the meaning of Rule 9(h), F.R.C.P." Of course, as Judge Mansfield held, this stipulation by I.T.O. did not constitute a waiver of its right to object that there was no admiralty jurisdiction. DiPaola v. International Terminal Operating Co., Inc., 294 F.Supp. 736, 737 (S.D.N.Y.1968); see also, Nakken v. Fearnley & Eger, 137 F.Supp. 288, 290 (S.D.N.Y.1956).

to some contractual relationship—oral or written—between I.T.O. and Pier 8. Since Judge Mansfield had no evidence about this relationship before him, and since there is no evidence about it before us, we find it necessary to remand the case for further proceedings to establish the exact nature of the arrangement between I.T.O. and Pier 8 and for a re-examination of the question of federal jurisdiction in light of that relationship. When the parties have presented evidence on these questions, Judge Mansfield will be able to pass upon the relevance of these facts to plaintiff's claim and defendant's assertion that there is no federal jurisdiction.

It is clear that the parties are responsible for the misunderstanding of the facts by the district court. I.T.O.'s memorandum of law in support of its motion for summary judgment did not discuss the contractual relationship between any of the several parties. Di-Paola's opposing memorandum of law alleged two bases for admiralty jurisdiction: (1) that the tort was a maritime tort; and (2) that I.T.O., as "agents of the vessel," breached "a maritime contract entered into by it." Defendant I.T.O.'s reply memorandum of law did not deny the existence of such contract; I.T.O. made no effort to present to the district court an accurate picture of the contractual arrangements involved. Rather, I.T.O. argued that "[j]urisdiction in admiralty is not present because of remoteness of time and place." Several statements in Brodin Line's papers undoubtedly contributed to the confusion. The Brodin Line answer first set forth the fact that there was a written contract, dated August 29, 1963, between Brodin Line and Pier 8. However, the answer also stated that Di-Paola's injuries were "due to the breach by [I.T.O.] of its warranty to defendants sued herein as Brodin Line, that said work would be carried on in a proper and workmanlike manner." The Brodin Line pretrial memorandum alleged that both I.T.O. and Pier 8 "were guilty of breaches of contractual obligations

owing to [Brodin Line] in connection with their services at Pier 8 * * *." The same memorandum also stated that Brodin Line would introduce in evidence a "Berthing agreement between defendants and third-party plaintiffs (presumably, Brodin Line) and third-party defendant, Pier 8"; a "Stevedoring contract," the parties to which were unspecified; and the "Stevedoring bills and work records of" I.T.O.

Moreover, several other pretrial memoranda—notably those of plaintiff Di-Paola, third-party plaintiff Japan Line, and I.T.O.—indicated that any and all contracts between the parties would be introduced in evidence.

Thus, the parties failed to present a complete and accurate record to the district court. Under these circumstances we think we should remand for such further proceedings as the district court may deem appropriate.

Remanded for further proceedings.