**MARINE STEVEDORING CORPORA-TION and Liberty Mutual Insurance Company, Petitioners,**

v.

**Jerry C. OOSTING, Deputy Commissioner, United States Employees' Compensation Commission, 5th Compensation District, Respondent.**

Civ. No. 4800.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 8, 1965.

Parsons & Powers, L. S. Parsons, Jr., John A. Field, III, Norfolk, Va., for Marine Stevedoring Corp. and Liberty Mut. Ins. Co.

Amato, Babalas, Breit, Cohen, Rutter & Friedman, C. Arthur Rutter, Jr., Norfolk, Va., for intervenor, Lillian Vann.

C. V. Spratley, Jr., U. S. Atty., Norfolk, Va., Leavenworth Colby, Ad. & Shipping Section, U. S. Department of Justice, Washington, D. C., for respondent.

WALTER E. HOFFMAN, Chief Judge.

Petitioners, the employer and its compensation insurance carrier, respectively, of John Robert Vann, request an injunction restraining the Deputy Commissioner from enforcing an award of compensation benefits, pursuant to an order dated

August 21, 1964, wherein death benefits were directed to be paid to Lillian Vann, the widow of the deceased. The award was, of course, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.

The deceased employee met his death on April 30, 1963, according to the following summarization of facts as found by the Deputy Commissioner:

"* * * [T]hat on said day the employer had a contract for the handling of lines and cables in mooring and movement of the S/S 'JAMES E. HAVILAND' and for cleaning of the ship after the grain cargo was discharged; that the ship was berthed sternwise at the Norfolk and Western Pier and secured by two bow lines, three stern lines, one wire cable from bow of ship to winch on pier and one wire cable from stern to winch on pier; that the primary purpose of the winches and cables is for moving a ship alongside the pier in parallel, in lieu of using a tug to move the vessel forward or aft in loading or unloading operations, and both winches are used at the same time; that the winches are located at a fixed position on the pier and cables attached thereto run in each direction to pulleys at certain locations on the pier some distance beyond both ends of ship; from the pulleys the cables are reversed a number of feet, looped around bollards and from there the cables run to attachments on ship; that said pier was built on concrete piling and extends at a right angle from shore at least 3500 feet into the Elizabeth River; that on said day the ship was moved sternwise necessitating adjustment in the lines attached to stern bollard on pier; that on said day the deceased employee herein while performing service as a foreman for the employer sustained accidental injury which occurred when he struck the water and drowned; that this injury and his death by drowning occurred when he was on the offshore side of the cable and about twelve inches from the edge of the pier as he and a fellow worker lifted the cable off the stern bollard, causing the heavy cable to straighten out and precipitating them off the pier into the Elizabeth River * * *."

The sole issue is whether or not the fatal injury occurred "upon the navigable waters of the United States." The Deputy Commissioner answered this inquiry in the affirmative. We agree and his decision is affirmed, with a resulting dismissal of the petition for injunction.

For what it may be worth, we start with a presumption, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the Act. 33 U.S.C. § 920(a). Moreover, as the Supreme Court has said, the Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results. Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5. If the findings, inferences and interpretations of the Deputy Commissioner are supported by substantial evidence in the record, considered as a whole, and are not forbidden by law, the order must be sustained even though the court may be inclined to take a different view of the matter. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual Ins. Co., 340 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; N. L. R. B. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170.

If the very recent decision in Interlake Steamship Company v. Nielsen, 6 Cir., 338 F.2d 879, contains a correct statement of the existing law on the subject, we think it clear that the present award must be sustained. In Interlake the deceased was a shipkeeper who, while checking the mooring lines of his ship, drove his car off the end of the pier. He died from a fractured skull caused by the impact of the car upon the frozen waters of Lake Erie. In considering the effect of Calbeck v. Travelers Insurance

80

Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed. 2d 368, the Sixth Circuit expresses the view that Calbeck rejects "many of the past decisions dealing with the limits of state versus admiralty jurisdiction." In summary the Sixth Circuit said:

"It seems obvious to us that the trend of case law, the impact of the Admiralty Extension Act, and the effect of Calbeck have all pointed in the direction of expanding the boundaries of admiralty jurisdiction toward land. It does not require any great clairvoyance to hold that at present admiralty jurisdiction clearly encompasses the navigable waters immediately adjacent to a dock.

"If Calbeck holds (and we think it does) 'that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority,' then there can be no doubt about the outcome of this appeal. No one asserts that claimant was killed (or injured) until the impact on the frozen substance of the navigable waters at the end of the dock. The fact which impressed the District Judge—that the impetus which propelled claimant onto the ice had a land-based origin—does not alter the fact that the situs of his injury and death was clearly within the scope of admiralty jurisdiction."

It should be noted that Interlake considers—and rejects or distinguishes—many of the cases now relied upon by petitioners. The Sixth Circuit rejects, as being neither binding nor persuasive, the language in Atlantic Stevedoring Co. v. O'Keeffe, S.D.Ga., 220 F.Supp. 881. It points out that two authorities preceded the effective date of the Longshoremen's Act, and all were prior to the adoption of the Admiralty Extension Act in 1948.[1] And, of course, all of these

cases were many years before Calbeck. In short, much water has flowed in the interim period and these authorities may now be suffering from legal obsolescence. Counsel for petitioners have ably presented their views, but their argument has been rebutted by the more recent decisions and trends.

The Fourth Circuit has commented upon the effect of Calbeck in Boston Metals Company v. O'Hearne, 329 F.2d 504, cert. den. 85 S.Ct. 49. A welder was killed while he was engaged in dismantling the gun turret of a decommissioned battle cruiser which had been deliberately run aground and whose engines were disconnected and inoperative. The cruiser was alongside a pier in the Patapsco River. The Fourth Circuit held that Calbeck was "dispositive of the case at hand" and upheld the award.

In the Fifth Circuit, Holland v. Harrison Bros. Dry Dock and Repair Yard, Inc., 306 F.2d 369, the action was by a shipyard worker who, while standing on dry land lifting a hose to work on a barge drawn upon a marine railway, was injured. One end of the hose was under the barge and in the water. The Court of Appeals, relying in part upon Calbeck, held that the factual situation placed the case within the "twilight zone" and that the deputy commissioner could properly give relief under the Longshoremen's Act.

It would serve no useful purpose to discuss whether Calbeck has, in effect, done away with the "twilight zone" doctrine. Some writers intimate that the decision goes that far. The Fifth Circuit continues to apply the "twilight zone" theory, but points out that Calbeck fortifies the expanding trend of jurisdiction under the Longshoremen's Act. Certainly it is true that if Holland presents a "twilight zone" situation, the facts in the present case are even more

1. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); L'Hote v. Crowell, 54 F.2d 212 (C.A.5, 1931), reversed on other grounds, 286 U.S. 528, 52 S.Ct. 499, 76 L.Ed. 1270 (1935); Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935); Smith & Son v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928); The Strabo, 98 F. 998 (C.A.2, 1900).

cogent in support of an award under the Longshoremen's Act. Certainly it is true that if an award was proper in Interlake, it is even more appropriate to sustain the award in the present case. Furthermore, under pre-Calbeck and pre-Interlake authority, there is room for argument that the Longshoremen's Act applies for, in 2 Am.Jur. (2d), Admiralty, § 85, it is said:

"If a person or property is precipitated from land into the sea as the result of a wrongful act or omission, and there is no impact on the person or property before he or it strikes the water, the tort or accident for jurisdictional purposes, is considered to have occurred on the water. * * * "

An order will be entered upon presentation affirming the award of the Deputy Commissioner.