John W. EAST, Petitioner,

v.

Jerry C. OOSTING, Deputy Commissioner, United States Employees' Compensation Commission, Fifth Compensation District, Respondent,

United States Lines Company and The Travelers Insurance Company, Intervenors.

Albert AVERY, Petitioner,

v.

Jerry C. OOSTING, Deputy Commissioner, United States Employees' Compensation Commission, Fifth Compensation District, Respondent,

Liberty Mutual Insurance Company, Intervenor.

Civ. A. Nos. 4798, 4976.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 10, 1965.

Kelsey & Rabinowitz, Norfolk, Va., for both petitioners.

C. V. Spratley, Jr., U. S. Atty., W. T. Mason, Jr., Asst. U. S. Atty., and U. S. Dept. of Justice, Leavenworth Colby, Sp. Asst. U. S. Atty., for respondent Deputy Commissioner.

John W. Winston, Norfolk, Va., for U. S. Lines Co. and Travelers Ins. Co.

William B. Eley, Norfolk, Va., for Liberty Mut. Ins. Co.

WALTER E. HOFFMAN, Chief Judge.

In substantially identical actions each of petitioners seeks a trial *de novo* on the jurisdictional issue, and further requests the entry of an order setting aside the findings of the respondent Deputy Commissioner, which were to the effect that the injury in each case did not occur upon the navigable waters of the United States within the meaning of the Longshoremen's and Harbor Workers' Compensation Act.

The two cases have not been consolidated for trial or hearing, but the governing principles in each case are essentially the same and are the subject of this joint memorandum for the convenience of the Court. However, separate orders should be entered and, if appeals are noted, separate notices of appeal should be filed.

In East, the petitioner was an employee of the United States Lines Company on June 17, 1963. The employer was engaged in maritime employment on the navigable waters of the United States and, at the time in question, had a verbal agreement with Whitehall Terminal Corporation, a stevedoring concern, to discharge cargo from the S.S. AMERICAN PRESS which was moored on the north side of Pier No. 2, Army Base; the pier being owned by the Department of Commerce, Maritime Commission, but the north side being leased to Whitehall Terminal Corporation. The pier is 334 feet wide and projects out over the Elizabeth River at an approximate right angle from the land a distance of 1328 feet. The pier is supported by piles sunk into the river bed. There is a shed on the pier covering a distance of 1280 feet, the first 500 feet being two stories high. The width of the apron of the pier at the extreme offshore end is 40 feet, and on the north side is 36 feet. The depth of the water at mean low water off the end of the pier is from 30 to 35 feet and along the north side of the pier's apron is 30 feet. While not in the findings of the Deputy Commissioner, the parties have stipulated that there was water under the pier of sufficient depth to permit a small barge or a small launch or rowboat to go between the pilings. It is further

agreed that no cargo boat could go under the pier. The pier is attached and connected to the land and, as such, is an extension of land. East was employed as a cargo checker and, at times, it became necessary for him to board vessels. On the day in question East was assigned to check cargo on the north side of Pier No. 2, adjacent to the No. 5 hatch of the AMERICAN PRESS, as the cargo was discharged from the hatch. While checking cargo *under the shed,* he was struck on the leg by a bale of wool which had fallen off a fork lift being operated by an employee of Whitehall. Thus he was on the surface of the pier when he sustained his injury. He was awarded compensation benefits under the Workmens' Compensation Act of Virginia, but the Deputy Commissioner rejected East's claim for benefits under the Longshoremen's and Harbor Workers' Act as the injury sustained did not occur upon the navigable waters of the United States (including any dry dock).

In Avery, the petitioner was an employee of Old Dominion Stevedoring Corporation in the capacity of longshoreman at the time of his injury on December 28, 1961. He was assigned, together with other members of the work gang, to an open type railroad car and was engaged in hooking up logs which, in turn, were being hoisted from the railroad car by means of the ship's gear and loaded onto the vessel which was afloat in the Elizabeth River. While a log was being lifted from the railroad car by the ship's gear, petitioner was struck by one or more logs so attached to the vessel's gear, thereby crushing him against the side of the railroad car. The railroad car in question was on the surface of Pier B, City Piers, which is a usual type structure existing in the Norfolk area. The pier is attached to land at one end and extends outward and over the waters of the Elizabeth River, thereby becoming an extension of land. Avery was awarded compensation benefits under the Workmen's Compensation Act of Virginia, but the Deputy Commissioner rejected his claim for benefits under the Longshoremen's and Harbor Workers' Act as the injury sustained did not occur upon the navigable waters of the United States (including any dry dock).

In both cases the injury occurred on a pier. In East, it took place under a shed on a pier. In Avery, the injury was apparently on the apron area as there is no suggestion of any shed on the pier in question. Moreover, in Avery, the injury occurred as a result of an actual loading operation while the ship's gear was attached to logs being hoisted from a railroad car. We do not believe that these minor differences create any contrary rule to the well-established principle of law and the actions of the Deputy Commissioner are approved and affirmed, thus calling for a denial of each petition and a judgment for the respondent in each case.

Initially we may dispose of petitioners' contentions that they are entitled to a trial *de novo* on the jurisdictional issue. Our views on this subject have been previously discussed in Dixon v. Oosting, E.D.Va., 238 F.Supp. 25, and we adhere to this ruling. In short, a trial *de novo* on the issue of jurisdictional facts is not mandatory but is a matter of discretion.

We will not repeat the familiar rule that findings of the Commissioner are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole, O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, or "unless they are irrational," O'Keeffe v. Smith, Hinchman and Grylls Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895. We recognize these principles as the scope of judicial review.

The main thrust of petitioners' argument is that the water under the pier is sufficient to constitute navigable waters of the United States and, therefore, the injury is compensable under the federal act. From time immemorial piers, docks, wharves and other like structures, which are firmly attached to the land and extend over navigable waters, have been

deemed to be extensions of the land, and injuries suffered thereon are compensable only under state compensation laws. Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; American Export Lines, Inc. v. Revel, 4 Cir., 266 F.2d 82; Hastings v. Mann, 4 Cir., 340 F.2d 910, cert. den. 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153. If, of course, the damage is caused by a vessel, the Extension of Admiralty Act, 46 U.S.C. § 740, becomes effective but this is clearly not the situation in East. As to Avery, it is argued that, while the injury was sustained on the pier, the log or logs were attached to the ship's gear and, therefore, the Admiralty Extension Act of 1948 is applicable. However, the legislative history does not suggest that Congress intended to broaden the coverage afforded by the Longshoremen's and Harbor Workers' Act. Sen.Rep. No. 1593, H.R. No. 1523, 80th Cong., 2nd Sess., 1948, 2 U.S.Code Cong. & Adm. News 1898. Judicial decisions, even since the landmark case of Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, similarly hold that the coverage is not extended by the Admiralty Extension Act. Interlake Steamship Company v. Nielsen, 6 Cir., 338 F.2d 879, 882; Hastings v. Mann, supra.

The recent case of Michigan Mutual Liability Co. v. Arrien, 2 Cir., 344 F.2d 640, is especially pertinent in holding that the point of injury is essentially decisive. While the ruling in Arrien upheld an award under the Longshoremen's and Harbor Workers' Act, the injured longshoreman was knocked off a temporary "skid" which extended from the pier to the vessel. In declining to analogize a temporary skid to a wharf, Circuit Judge Kaufman said:

"A wharf or pier is usually built on pilings over what *was* navigable water. When the structure is completed, the water over which it is built is *permanently* removed from navigation as if the structure had been in the first instance built on land."

We are unable to predict what may be forthcoming in considering the extension of coverage under the Longshoremen's and Harbor Workers' Act. However, it is abundantly clear that the Senate Judiciary Committee, in considering the matter in 1927, definitely noted that injuries occurring in loading or unloading are not covered unless they occur on the ship or between the wharf and the ship. Sen.Rep. 973, 69th Cong., 1st Sess., p. 16.

The fact that, in East, the cargo checker occasionally boarded the vessel in the performance of his duties fails to impress us. While it may appear inconsistent to compensate a cargo checker injured aboard a vessel under the federal act and, at the same time, deny him such benefits if injured while on the pier, any recourse is through legislative action by way of amendment to the act.

We do not believe that the Calbeck case has materially altered prior rulings as applied to the facts of the two cases now before the Court. Calbeck did not involve an injury on a pier; it was concerned with coverage for injuries on a new vessel under construction and afloat upon navigable waters. Moreover, in footnote 10 (370 U.S. 121, 82 S.Ct. 1200) Mr. Justice Brennan quotes the language set forth above in the Senate Report which expressly excluded coverage for injuries occurring in loading or unloading "unless they occur on the ship or between the wharf and the ship so as to bring them within the maritime jurisdiction of the United States."

The question presented is not new in the Fourth Circuit. Prior to Calbeck, Judge Sobeloff had occasion to comment upon the status of a longshoreman injured on a dock when a drum fell from the ship and rolled along the pier striking him. While the Fourth Circuit held that the longshoreman was not precluded from recovery against the shipowner by reason of the acceptance of state compensation benefits, it also pointed out in

American Export Lines, Inc. v. Revel, supra, 266 F.2d at p. 84, that:

"Since Revel was injured while standing on the dock (an extension of the land) his remedies are restricted to those afforded by the local law. * * * This is true even though the Congress has embraced such cases within the maritime jurisdiction of the United States. Extension of Admiralty Act, 46 U.S.C.A. § 740."

And in Hastings v. Mann, supra, a decision subsequent to Calbeck, the Fourth Circuit again said:

" * * * [I]t has been uniformly held that piers, docks, wharfs and similar structures extending over navigable waters are extensions of land, though their use and purpose be maritime. Damage to such structures and personal injuries suffered by persons while upon such structures are not compensable in Admiralty, unless, under the 1948 Act, caused by a vessel on navigable waters."

Other circuits have consistently held that persons injured upon a pier are restricted to compensation benefits under state law. Hagans v. Ellerman & Bucknall S.S. Co., 3 Cir., 318 F.2d 563; Delaney v. Towmotor Corp., 2 Cir., 339 F.2d 4; Kent v. Shell Oil Co., 5 Cir., 286 F.2d 746.

The Avery case concededly is stronger than East as it is at least arguable that Avery's injury was caused by a vessel on navigable water, notwithstanding that such injury was consummated on land, and hence is covered by the Extension of Admiralty Jurisdiction Act of 1948. The difficulty with Avery's contention is that he seeks to equate the terms "admiralty and maritime jurisdiction," as stated in the Act of 1948, with the jurisdictional requirement of the occurrence of the injury "upon the navigable waters" as provided in the Longshoremen's and Harbor Workers' Act. The question was answered by this Court in Revel v. American Export Lines, E.D.Va., 162 F.Supp.

279, 283–284, aff'd 4 Cir., sub nom. American Export Lines v. Revel, 266 F.2d 82, 84. But the Avery case is identical with Johnson v. Traynor, Deputy Commissioner, 243 F.Supp. 184, decided by Judge R. Dorsey Watkins for the District of Maryland on June 22, 1965. The exhaustive opinion of Judge Watkins cogently points to the reasons why the Admiralty Extension Act of 1948 did not amend the Longshoremen's and Harbor Workers' Act. We adopt the reasoning of the Johnson case and concur in this finding, thus disposing of the Avery case on the same basis as East.

Present orders in accordance with this memorandum.