**The TRAVELERS INSURANCE COMPANY and Levingston Shipbuilding Company, Appellants,**

**v.**

**R. J. SHEA, Deputy Commissioner, and James D. McCollough, Appellees.**

**No. 23492.**

United States Court of Appeals Fifth Circuit.

Aug. 9, 1967.

Louis V. Nelson, Pike Powers, Jr., Beaumont, Tex., Strong, Pipkin, Strong & Nelson, Beaumont, Tex., Charles S. Pipkin, Beaumont, Tex., of counsel, for appellants.

Louis R. Harolds, New York City, amicus curiae.

David L. Rose, Leavenworth Colby, Attys., Dept. of Justice, Washington, D. C., Barefoot Sanders, Asst. Atty. Gen., Wm. Wayne Justice, U. S. Atty., for appellee.

Ward Stephenson, Orange, Tex., Charles K. Ruth, Asst. U. S. Atty., Beaumont, Tex., John Cash Smith, Stephenson, Thompson & Morris, Orange, Tex., Paul S. Edelman, New York City, of counsel, amici curiae.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a suit to enjoin the enforcement of an award made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. The facts are simple and undisputed. James D. McCollough, an employee of Levingston Shipbuilding Company, was injured while assisting in repairing a barge when feeding a sandblasting machine. At the time of injury, he was working on a floating outfitting pier, which consisted of floating steel barges tied end to end, approximately 750 feet long and connected to land by a 90 foot ramp, which had been permanently anchored to the

shore and bottom of the navigable Sabine River by clusters of piling for eighteen years. Claimant McCollough was paid compensation at the scale provided by Texas law but brought his claim for the additional amount due under the federal Act. The Deputy Commissioner, finding that the injury occurred while claimant was "upon the navigable waters of the United States (including any dry dock)" within the meaning of the Act,[1] entered an award under the Longshoremen's Act and allowed full credit for payments made under the Texas act as provided by 33 U.S.C.A. § 914(k). Levingston and its insurer filed this suit seeking a mandatory injunction to set aside the award of the Deputy Commissioner as authorized by 33 U.S.C.A. § 921 (b) and 5 U.S.C.A. § 1009(e) and from a dismissal of their complaint have filed this appeal.

■ We have for resolution the singular question of whether McCollough's injury, which occurred on the floating outfitting pier described above, was an injury "occurring upon the navigable waters of the United States (including any dry dock)" and as such properly comes within the jurisdiction of the Longshoremen's Act. Our duty is logged and compassed. In the absence of substantial evidence to the contrary, we must presume that the claim is covered by the Act. 33 U.S.C.A. § 920, O'Leary v. Puget Sound Bridge and Dry Dock Co., 9 Cir. 1965, 349 F.2d 571; Marine Stevedoring Corporation v. Oosting, E.D. Va.1965, 238 F.Supp. 78. Concluding as we do, however, that there is no evidence to support the conclusion that McCollough was injured upon the navigable waters of the Sabine, we reverse the case.

■ The ratio decidendi in those cases interpreting § 903(a) is a beacon to us here. The coverage of the Act is not keyed to function but has uniformly been situs-oriented. As our Court held in O'Keeffe v. Atlantic Stevedoring Company, 5 Cir. 1965, 354 F.2d 48, 50:

"The difficult problem is the determination as to the place where the injury occurred. It is the place where the injury occurred that determines whether there is Longshoremen's Compensation coverage."

The Act does not cover all harbor workers, or all those working on ships, or those performing services to ships. These words would be the actuating words if functionalism were to prevail over locus. Congress set out to cover workers not protected by state workmen's compensation laws, but there is a void, a so-called twilight zone, between navigable and nonnavigable waters. Since there exists hybrid employment with labors terrestrial and maritime and since state coverage does not preclude federal coverage, Calbeck v. Travelers Insurance Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, we do have the paradox of two workers doing the same type of work a few feet apart receiving injuries in the same way, yet treated as legal strangers. The paradox is not judicially soluble unless we extirpate the words "upon * * * navigable waters * * * (including any dry dock)" from the statutory commandment, which we are forbidden to do. Instead, we embark on an analysis of the cases construing them. The pattern of decision which emerges is not crystalline or pellucid, but the cases do lend themselves to rude categorization:

(a) *Injuries occurring on piers, wharves, or other extensions of land*

■ Structures such as wharves, piers, and docks affixed permanently to shore traditionally have been held to be extensions of land and any remedies for injuries occurring on such structures have been held to be restricted to those

---

1. Coverage under § 903 is provided for in pertinent part as follows:

"(a) Compensation shall be payable under this chapter * * * only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

afforded by local law—this despite the fact that the injured employee was employed by one who was subject to the Longshoremen's Act and was injured while loading, unloading, or otherwise concerned with the vessel. O'Keeffe v. Atlantic Stevedoring Company, 5 Cir. 1965, 354 F.2d 48; American Export Lines, Inc. v. Revel, 4 Cir. 1959, 266 F.2d 82; Nicholson v. Colbeck, S.D. Tex.1966, 266 F.Supp. 103; East v. Oosting, E.D. Va.1965, 245 F.Supp. 51; Johnson v. Traynor, D. Myld.1965, 243 F.Supp. 184.

In the *Revel* case, supra, Revel, a stevedore, was injured when a load of drums fell onto the pier on which he was working. In denying recovery under the Act, the Fourth Circuit stated clearly that "[s]ince Revel was injured while standing on the dock (an extension of the land) his remedies are restricted to those afforded by the local law." 266 F.2d at 84.

The fact that water ebbs and flows under piers or wharves has been held insufficient to make injuries occurring on them compensable under the Act. East v. Oosting, supra; Nicholson v. Colbeck, supra. The controlling question seems to be whether the water beneath the structure has been permanently removed from navigation. As the Court said in Michigan Mutual Liability Co. v. Arrien, 2 Cir. 1965, 344 F.2d 640, 644:

"A wharf or pier is usually built on pilings over what *was* navigable water. When the structure is completed, the water over which it was built is *permanently* removed from navigation as if the structure had been in the first instance built on land."

Thus, in the *Arrien* case, the stevedore injured when knocked from the skid on which he was working was held to be covered by the Act, since the skid in question was a removable platform extending out over the water, was easily dismantled, and was stored on the wharf when not in use. The Court reasoned that the skid was similar to a gangplank as opposed to a permanent structure such as a pier

or wharf and that the waters under it were as navigable as they would be if a ship were moored in the same place.

In yet another case, Johnson v. Traynor, supra, companion proceedings were brought by two longshoremen injured while loading a vessel afloat on navigable waters from a gondola-type railroad car positioned on railroad tracks at the high pier of the Bethlehem Steel plant. The injuries were caused when a steel beam, being hoisted from the railroad car by a crane located on the vessel, swung back, striking one of the men, propelling him onto the pier, fatally injuring him, and pinning the other to the gondola car. Despite the fact that the pier's 600-foot surface extended over navigable waters, the court denied recovery under the Act. We agree with these interpretations. If injuries occurring "over" as well as "upon" navigable waters were congressionally intended to be covered by the Longshoremen's Act, the statute could and would have so read. It does not.

(b) *Drydocks*

■ Injuries occurring on dry docks, which are located on navigable waters and used to raise the ship out of water to permit examination or repairs to its hull impossible while the ship is afloat, are within Longshoremen's Act coverage by express statutory inclusion. E. g., Avondale Marine Ways, Inc. v. Henderson, 1953, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77. In his concurring opinion to the Court's per curiam opinion in *Avondale*, which held that a marine railway is a dry dock within the statute, Mr. Justice Douglas comprehensively defined a dry dock as follows:

"[T]here are three kinds of dry docks. (1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land. The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is the marine railway, on which the vessel is drawn out of the water, in-

stead of the water being drawn away from the vessel. A ship is no more and no less on land when it rests in a graven dry dock than when it rests on a marine railway. The three types of dry docks are not different in kind; functionally they are the same. And I see no basis for concluding that Congress treated one differently from the others for the purposes of this Act." 346 U.S. at 367, 74 S.Ct. at 101, 98 L.Ed. at 79.

See also O'Leary v. Puget Sound Bridge and Dry Dock Co., 9 Cir. 1965, 349 F.2d 571, 572–573.

Land alongside and under a marine railway has also been held to be an integral part of the marine railway and hence a dry dock. Holland v. Harrison Brothers Dry Dock and Repair Yard, Inc., 5 Cir. 1962, 306 F.2d 369. Confronted with a shipyard workman who was injured while lifting hose to work on a barge drawn up on a marine railway, Judge Wisdom, speaking for the Court, said:

"It seems reasonable to us that any meaningful definition of marine railway should include the land immediately adjacent to the tracks *that is beneath a ship drawn up on the railway and that must be used in the course of repairing any ship on the railway.*" 306 F.2d at 372.

In the recent case of O'Leary v. Puget Sound Bridge and Dry Dock Co., supra, the Ninth Circuit faced the dry dock inclusion in the Longshoremen's Act and indicated its unwillingness to further enlarge longshore coverage. That case involved an injury sustained on dry land by an employee engaged in new ship construction from a building way. The building way, located on land, had its seaward end extending into the water on an incline, around which water flowed. In holding that the building way did not constitute "any dry dock" within the Act, despite the portion which extended into the water, the Court affirmatively imposed a limit to the outer boundaries of the Longshoremen's Act.

(c) *Injuries occurring in or upon navigable waters: Cases with exceptional fact situations*

Finally, there are those exceptional cases which base their holdings allowing recovery upon unique factual situations. Most representative is Interlake Steamship Company v. Nielson, 6 Cir. 1964, 338 F.2d 879, cert. den. 381 U.S. 934, 85 S.Ct. 1765, 14 L.Ed.2d 699, where the Court permitted recovery under the Act for a fatal injury occurring when a shipkeeper drove his automobile off a dock and fractured his skull on the frozen navigable waters of Lake Erie. The Court reasoned that despite the fact that the impetus which propelled claimant onto the ice had a land-based origin, the situs of the injury and death was clearly the frozen navigable water of Lake Erie, undisputedly within the scope of admiralty jurisdiction. Similarly, recovery has been allowed where a longshoreman was lifted from the dock, dropped into navigable water between the ship and the wharf, and drowned, *O'Keeffe*, supra, and where drowning resulted from a fall off the pier, *Marine Stevedoring Corp.*, supra. These cases support the thesis that the Longshoremen's Act should be applicable in these and similar factual situations, for, as said in 2 Am.Jur.(2d), Admiralty, § 85:

"If a person or property is precipitated from land into the sea as the result of a wrongful act or omission, and there is no impact on the person or property before he or it strikes the water, the tort, for jurisdictional purposes, is considered to have occurred on the water. * * *"

Applying existing case law to the outfitting pier in question, the conclusion is inescapable that this was a territorial tort rather than a maritime misfeasance within the construction of the Longshoremen's Act. The law in this area has been geographized as the "twilight zone", and though our only illumination is by twilight, our direction is clear. This pier

does not dwell in a penumbra, for the plethora of cases safely navigates us, by buoys and soundings, to land; that is, to the law governing injuries occurring on piers, wharves, or similar structures. We have no unique or exceptional factual situation before us.

The court below found that Mc-Collough was injured when "working on a floating outfitting pier supported by barges. The pier was some 900 feet long and was permanently anchored to the shore and bottom of the Sabine River by piling clusters." It had, moreover, been so anchored for eighteen years. This outfitting pier, in sum, was a structure permanently affixed as an extension of land. It was not akin to the skid in *Arrien*, supra, for it was the very antithesis of a transient or transitory structure. Its permanent home was in the water, and the waters below it had been completely removed from navigation. As such, it must be considered a pier or wharf, and injuries occurring upon it, like the one suffered by McCollough, are compensable only by local law and are not covered by the Longshoremen's Act. *O'Keeffe*, supra; *Revel*, supra; *Nicholson*, supra; *East*, supra; *Johnson*, supra. No conclusion contra is indicated by the *Interlake Steamship Co.* line of cases, discussed supra, since these cases are readily distinguishable on their facts from the one at bar.

Appellees would have us liken this floating outfitting pier to a dry dock or to the land alongside a marine railway, since the pier can be used to repair a ship. Thus, they urge that we uphold the Deputy Commissioner's award. We are not, however, dealing with a dry dock or marine railway. A dry dock functionally as well as nautically is different from a floating barge. A dry dock lifts or shifts the ship. If it is to be a marine railway, it is hoisted upon land. If it is to be a dry dock, it submerges or fills with water.

This floating barge does neither, and it must be remembered that the coverage of the Longshoremen's Act is not keyed to function but is situs-oriented. We are not impressed by the fact that McCollough was injured when assisting in repairing a vessel. We are, however, very impressed by the undisputed evidence, which shows that the situs of the injury to McCollough was a permanently anchored structure which, once built, was an extension of the shore of the Sabine River.

The Deputy Commissioner and appellee McCollough would, by some absorptive process, engraft the provisions of the Admiralty Extension Act of 1948, 46 U.S.C.A. § 740 [2] onto the Longshoremen's Act. This may have some logical magnetism, but it defies the precursive and the posterior history of both Acts. In *Johnson v. Traynor*, supra, a similar claim was made that the Admiralty Extension Act in effect amended the coverage provision of the Longshoremen's Act and extended coverage under the latter act to certain types of land injuries. In an extensive, scholarly opinion, Judge Watkins dismissed this contention, saying that Congress, although it had been urged to, did not intend to so extend coverage.

"Certainly the Extension Act does not strike down the distinction previously made by the courts between land injuries and water injuries. Indeed the act expressly recognizes the existence of land injuries as distinguished from injuries occurring on navigable water. * * *

"Secondly, the Extension Act is certainly not an express amendment of the Longshoremen's Act. It is completely silent as to the Longshoremen's Act. Similarly a contemporaneous amendment of the Longshoremen's Act contains no cross reference to the Extension Act. * * *

2. 46 U.S.C.A. § 740 provides in pertinent part:
"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

\* \* \* \* \*

"Thus, there is no indication in any of the legislative history pertaining to the Longshoremen's Act either before, at the time of, or after the passage of the Extension Act that the Extension Act was intended in any way to affect the scope of coverage of the Longshoremen's Act."

243 F.Supp. at 190–192.

If the Admiralty Extension Act were to measure the jurisdictional perimeter of the Longshoremen's Act, this could have and would have received express Congressional articulation. The reports, debates, colloquies, and other prologues to legislative gestation, as well as the recent judicial decisions, do not indicate any such doctrine of co-extensiveness. *Interlake Steamship Co.*, supra; *East.* supra.

Reversed and remanded for proceedings consistent with this opinion.