**NALCO CHEMICAL CORPORATION and the Fidelity and Casualty Company of New York, Plaintiff,**

v.

**R. J. SHEA, Deputy Commissioner, Seventh Compensation District, Bureau of Employees Compensation, United States Department of Labor, and Mrs. Joyce Quave, Individually and on behalf of her five minor children, Defendants.**

Civ. A. No. 68-972.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 17, 1968.

Lawrence J. Ernst of Christovich & Kearney, New Orleans, La., for plaintiff.

Robert Homes, Asst. U. S. Atty., New Orleans, La., for defendant R. J. Shea, Deputy Commissioner.

Gerald P. Fedoroff, David S. Cressy, New Orleans, La., for defendant Mrs. Joyce Quave.

COMISKEY, District Judge.

This is a suit to enjoin the enforcement of an order awarding longshoremen's compensation to the widow of a

deceased pilot salesman employed by the plaintiff Nalco Chemical Corporation. The plaintiff's husband was killed in a plane crash while acting within the scope of his employment. Suit was brought by Nalco and its insurer the Fidelity and Casualty Company of New York against R. J. Shea, the Deputy Commissioner for the Department of Labor, Bureau of Employees' Compensation, Seventh Compensation District, and against Mrs. Joyce Quave, the widow of the deceased pilot.

There are several motions before the Court. The plaintiffs have filed a motion for a trial de novo on the question of jurisdiction; the defendant Deputy Commissioner has brought a motion to remand the case back to his tribunal for further findings; and the defendant widow has moved for a summary judgment affirming the granting of the compensation award.

## I. PLAINTIFFS' MOTION FOR A TRIAL DE NOVO

Plaintiffs rely on Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), in which suit was brought for an injunction against the enforcement of a workmen's compensation award under the Longshoremen's and Harbor Workers' Compensation Act. An award of compensation had been made by the deputy commissioner in favor of the claimant based upon the finding that the claimant had been injured while in the employ of petitioner and while performing services on the navigable waters of the United States. It was contended that at the time of his injury the claimant was not employed by the petitioner, and therefore, his claim was not within the jurisdiction of the deputy commissioner. The district court held a hearing de novo on the jurisdictional issue, held that the claimant was not in the employ of the petitioner at the time of the accident, and restrained the enforcement of the award. The decree was affirmed by the Court of Appeals for the Fifth Circuit, and certiorari was granted by the Supreme Court. The Supreme Court affirmed the two lower courts and

approved of the district court's holding of a de novo hearing on the jurisdictional issue. Although the deputy commissioner's findings of fact are to be given considerable weight by a reviewing court, the Supreme Court drew a distinction between ordinary facts and "fundamental" or "jurisdictional" facts, without which the deputy commissioner would have no power to hear the case:

"A different question is presented where the determinations of fact are fundamental or 'jurisdictional,' in the sense that their existence is a condition precedent to the operation of the statutory scheme. These fundamental requirements are that the injury occurs upon the navigable waters of the United States, and that the relation of master and servant exists. These conditions are indispensable to the application of the statute, not only because the Congress has so provided explicitly * * *, but also because the power of the Congress to enact the legislation turns upon the existence of these conditions.

"In amending and revising the maritime law, the Congress cannot reach beyond the constitutional limits which are inherent in the admiralty and maritime jurisdiction. Unless the injuries to which the act relates occur upon the navigable waters of the United States, they fall outside that jurisdiction. Not only is navigability itself a question of fact, as waters that are navigable in fact are navigable in law, but, where navigability is not in dispute, the locality of the injury, that is, whether it has occurred upon the navigable waters of the United States, determines the existence of the congressional power to create the liability prescribed by the statute." Id. at 285 U.S. 54–55, 52 S. Ct. 294.

The Supreme Court therefore concluded that a court reviewing jurisdictional facts need give no weight to the deputy commissioner's findings on such facts. The Court said, "We think that the essential independence of the exercise of

the judicial power of the United States, in the enforcement of constitutional rights requires that the federal court should determine such an issue upon its own record and the facts elicited before it." Id. at 285 U.S. 64, 52 S.Ct. 297. The court therefore held that "the District Court did not err in permitting a trial de novo on the issue of employment." Id. at 285 U.S. 65, 52 S.Ct. 298.

But Crowell v. Benson has not really been followed in the 36 years since that decision was rendered. Although it has never been expressly overruled by the Supreme Court, most courts have virtually ignored it, as is evidenced by the numerous twilight zone cases which all dealt with jurisdictional problems under the Longshoremen's and Harbor Workers' Compensation Act. These courts could have held de novo review in these cases under the *Crowell* doctrine, but in almost every case the *Crowell* decision was not even mentioned.

The Fifth Circuit has not expressly passed on this question. The closest it has come to commenting on the current viability of the *Crowell* doctrine was in Riley v. Henderson, 218 F.2d 752 (5th Cir., 1955). However, the court determined that the question in that case was substantial rather than jurisdictional, and consequently, it was "unnecessary to consider appellees' contention that the rule of that case [Crowell v. Benson] is of doubtful validity in the light of more recent Supreme Court cases." Id. at 218 F.2d 754.

The Ninth Circuit has held that it is not mandatory for a district court to hold a de novo trial on jurisdictional issues in Longshoremen's and Harbor Workers' Compensation Act cases, but rather this matter is within the district court's discretion. In Western Boat Building Co. v. O'Leary, 198 F.2d 409, 413 (9th Cir., 1952), the Ninth Circuit said:

"We do not understand Crowell v. Benson to afford *a trial de novo as a matter of right* under circumstances where there is no real issue of fact

presented. * * * If however, the true rule is contrary to our impression, we simply refuse to invoke it where (as here) no worthwhile purpose would be served thereby. To do so would be to adhere to the superfluous and breed procrastination." (Emphasis by the court.)

More recently, the Ninth Circuit has upheld the Western Boat case in Morrison-Knudsen Co. v. O'Leary, 288 F.2d 542, 543 (9th Cir., 1961), in which the court said:

"[A]s far as this Circuit is concerned the rule laid down in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L. Ed. 598, has been limited and interpreted so as not to require a trial de novo as a matter of right under circumstances where there is no real issue of fact presented. Rather, this court has consistently held that where no worthwhile purpose would be served, the substantial evidence rule should be applied, and if there is such evidence upon which to sustain the deputy commissioner's findings, his conclusions should be sustained."

The Supreme Court recently cited the *very pages* of the *Morrison-Knudsen* case on which the court rejected the *Crowell* doctrine for the proposition that "in the absence of specific statutory authorization, a de novo review is generally not to be presumed." Consolo v. Federal Maritime Commission, 383 U.S. 607, 619, 86 S.Ct. 1018, 1026 at footnote 17, 16 L.Ed.2d 131 (1966).

The Ninth Circuit's decisions on this matter were followed in Dixon v. Oosting, 238 F.Supp. 25 (E.D.Va.,1965); East v. Oosting, 245 F.Supp. 51 (E.D. Va.,1965); and Puget Sound Bridge & Dry Dock Co. v. O'Leary, 260 F.Supp. 260 (W.D.Wash.,1966). A de novo trial in jurisdictional fact situations was also held to be discretionary with the district court in Luckenbach S. S. Co. v. Lowe, 96 F.Supp. 918 (E.D.Pa.1951).

This Court agrees with the reasoning of the Ninth Circuit and holds that the granting of a de novo trial in

Longshoremen's and Harbor Workers' Compensation Act cases is a matter of discretion. If this were not so, the losing party in every longshoremen's compensation proceeding could gain a new trial of part of the case by coming into federal court and getting a trial de novo on the jurisdictional facts. This would be true in every case because the commissioner always has to find that he has jurisdiction before he can determine the case on its merits. This would thwart the purpose for which administrative agencies were created. "[I]n a complex society whose legislators have seen fit to create a host of administrative agencies functioning throughout the economy, the administrative-judicial system would defeat its own purpose and break down of its own weight if every decision were reviewed de novo." Watson v. Gulf Stevedore Corporation, 400 F.2d 649, 651 (5th Cir., 1968).

■ Invoking this discretion, it is our conclusion that the record of these proceedings before the Deputy Commissioner is quite sufficient on the jurisdictional question, and we therefore can decide this question without the necessity of hearing the same witnesses who testified in the administrative proceeding. For this reason the motion of the plaintiffs for a trial de novo on the question of jurisdiction is denied.

## II. THE DEPUTY COMMISSIONER'S MOTION TO REMAND

The defendant Deputy Commissioner asserts that the official record of proceedings before him establishes that the death of the employee occurred in the course of employment upon navigable waters within the meaning of 33 U.S.C. § 903(a). However, he also contends that it fails to adequately establish either that the plaintiff Nalco was "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States," within the meaning of 33 U.S.C. § 902(4), or that the death resulted from an injury occurring as a result of operations on the Outer Continental Shelf for the purpose of developing, removing or transporting oil or other natural resources on the Outer Continental Shelf, within the meaning of 43 U.S.C. § 1333(b) and (c). For this reason the Deputy Commissioner moves to have the case remanded back to his tribunal for further findings on these two issues.

■ But we do not agree with this contention. It is not necessary that the plaintiff's decedent be held to be within the scope of both 33 U.S.C. § 902(4) and 43 U.S.C. § 1333(b) and (c); a determination that he was covered by either of these provisions is sufficient to allow the plaintiff to recover compensation. For reasons which we will set out in discussing the defendant Mrs. Quave's motion for summary judgment, we hold that the record of the proceedings before the deputy commissioner is sufficient to establish that the plaintiff was within the scope of 33 U.S.C. § 902(4). Consequently, the defendant Deputy Commissioner's motion to remand is denied.

## III. THE DEFENDANT MRS. QUAVE'S MOTION FOR A SUMMARY JUDGMENT

The defendant Mrs. Quave has moved for a summary judgment affirming the compensation award of the Deputy Commissioner. The sole question to be determined here is whether the plaintiff Nalco is an employer within the meaning of 33 U.S.C. § 902(4), which provides:

"The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any drydock)."

Although Nalco would be covered by this provision, regardless of the nature of Quave's work, if any of its employees are engaged in maritime employment, Pennsylvania Railroad Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953), reh. den. 345 U.S. 913, 73 S.Ct. 638, 97 L.Ed. 1347 (1953), it is stipulat-

ed that none of Nalco's other employees were engaged in maritime employment. Therefore, we are only concerned with the question of whether Quave himself was engaged in maritime employment so as to make Nalco an "employer" under § 902(4).

The Deputy Commissioner made these findings of fact in connection with the nature of Quave's work:

"On the said day [October 31, 1962] the employee [Quave] while performing service for the employer as a pilot-salesman sustained personal injury resulting in his death. The employee was employed by the Visco Products Company, a division of Nalco Chemical Corporation. The employer is engaged in the business of producing and supplying oil treating chemicals. The deceased was a licensed pilot with many years experience flying float planes. Flying experience was a prerequisite for the job as a salesman for the employer. His job was to make sales calls on the various oil company offices wherever they might be located and to service existing accounts which involved going to the various locations and working with the oil and water testing. The only way to get to the drilling platforms was either by the float plane or by crew boat. His work consisted almost entirely of water areas. The float plane had no wheels and could be used only on water. Seldom did the float plane go offshore or beyond the 3 mile limit. This was because of rough seas. When the employee had to make a call offshore he did so by means of an oil company crew boat.

"The chemicals manufactured by the employer were normally packaged in 50 gallon drums and were transported from the place of manufacture to their destination by truck. They would then be loaded onto boats to be transported to drilling platforms. Salesmen such as the employee many times deliver to the platforms chemicals in 5-gallon cans. The 5-gallon cans, together with their testing equipment, had to be loaded and unloaded from the float plane or crew boat. Numerous times salesmen had to spend overnight and as much as a week offshore in the Gulf. There is no question but that the employee aided in the commerce of the employer." Deputy Commissioner's Compensation Order, paragraphs 2 and 3, at pages 1-2.

From the above facts the Deputy Commissioner concluded that Quave's employment was maritime in character and that this claim was within the jurisdiction of the Longshoremen's and Harbor Workers' Compensation Act.

■ There are certain guidelines to be followed in reviewing the deputy commissioner's findings of fact, which guidelines have recently been restated by the Fifth Circuit Court of Appeals. In Watson v. Gulf Stevedore Corp., 400 F.2d 649, 651 (5th Cir., 1968), the court repeated "[t]he settled formula" that "the decision of the administrative agency should be accepted unless there is no substantial evidence on the record as a whole to support it." Later, the court defined "substantial evidence" and made some general observations on the scope of review applicable to the district court's examination of the deputy commissioner's findings of fact:

"What is substantial evidence * * * was defined by the Supreme Court even before adoption of the Administrative Procedure Act. It is evidence that affords 'a substantial basis of fact in issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' NLRB v. Columbia Enameling and Stamping Co., 1939, 306 U.S. 292, 299-300, 59 S.Ct. 501, 505, 83 L.Ed. 660. In sum, the 'scope of review of jury verdicts and of administrative findings is the same. * * *' 4 Davis, Administrative Law Treatise, § 29.02, p. 120. Consequently, since 'findings may be

clearly erroneous without being unreasonable so as to be upset under the substantial-evidence rule, the scope of review of administrative findings is narrower than the scope of review of [the findings of a judge sitting without a jury].' Id., p. 121.

"The scope of judicial review of administrative decisions under the Longshoremen's and Harbor Workers' Act has not changed as a result of adoption of the Administrative Procedure Act. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 1965, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895. Inferences drawn by the deputy commissioner are to be accepted 'unless they are irrational or "unsupported by substantial evidence on the record * * * as a whole."' Id., 380 U.S. at 362, 85 S.Ct. at 1014, 13 L.Ed.2d at 898, citing O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S. Ct. 470, 95 L.Ed. 483." Id. at 400 F.2d 652–653.

But the Deputy Commissioner's findings are not invulnerable on appeal, as the Fifth Circuit was careful to point out in Goins v. Noble Drilling Corp., 397 F.2d 392, 394 (5th Cir., 1968):

"The scope of judicial review of the Deputy Commissioner's findings of fact in a Longshoremen's Act case is governed by the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., and this standard is that 'the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole.' O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951), (citing Universal Camera Corp. v. National Labor Rel. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951)). This review, however, is not to be a mere rubber-stamping of the Deputy Commissioner's order when the reviewing Court is unable to conscientiously conclude that the evidence supporting such decision is substantial. N.L.R.B. v. O. A. Fuller Super Markets, Inc., 5 Cir., 1967, 374 F.2d 197."

More recently, the court said that the *Watson* and *Goins* cases are consistent. Young & Co. v. Shea and Watson v. Gulf Stevedore Corp., 404 F.2d 1059 (5th Cir., December 9, 1968, on joint petition for rehearing en banc). In this case the court again took the opportunity to express its views on the standards of review to be applied to Longshoremen's and Harbor Workers' Act cases on appeal from the deputy commissioner:

"In reviewing a decision of the Commissioner and in applying the substantial evidence rule, the reviewing court must take into account that the standard of persuasion is less before the Commissioner than it would be in a jury trial of the same issue. This is because Congress has indicated an intention to require less. The policy of the Act that all doubtful questions are to be resolved in favor of the longshoreman is to be considered in determining whether there was substantial evidence before the Commissioner. Having taken this into account, the reviewing court applies the same rule to *review* of administrative proceedings that an appellate court applies to review of jury verdicts, and, in this respect, as we said in *Watson*, the *scope of review* of jury verdicts and of administrative findings is the same." 404 F.2d at page 1061. (Emphasis by the court.)

■ With these guidelines in mind, we now proceed to examine the Deputy Commissioner's findings of fact. We hold that these findings are supported by substantial evidence viewed in light of the record as a whole. The Deputy Commissioner's finding that much of Quave's work involved going out to offshore platforms by float plane or boat is adequately supported by the testimony of Larry Earl Rutledge (Transcript, p. 29), who worked with Quave almost every day for three or four months (Transcript, p. 26). Rutledge's testimony also substantiated the finding that he and Quave often had to spend as long as a week offshore (Transcript, p. 31). The fact that the plane had floats with

which it could land in water was confirmed by the testimony of Merwin Guy Hall (Transcript, p. 66) and Kenneth Russ (Transcript, p. 108). Larry Earl Rutledge's testimony also supports the Deputy Commissioner's findings concerning Nalco's routine of packaging the chemicals in 50-gallon drums and transporting them by truck and then by boat to the platforms. He also testified that the five-gallon cans were delivered to the platforms by the salesmen (Transcript, p. 30–31). We find no serious conflict in the testimony as to these facts and therefore conclude that they are supported by substantial evidence, taking into consideration the record as a whole.

The Deputy Commissioner concluded from the above facts that Quave's work constituted "maritime employment" under 33 U.S.C. § 902(4). It must be determined whether such a conclusion was warranted in these circumstances.

■ "Our reasoning begins with the basic proposition that the Longshoremen's and Harbor Workers' Compensation Act is to be liberally construed in favor of the injured employee. Voris v. Eikel, 1953, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5; Pillsbury v. United Engineering Co., 1952, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225." McClendon v. Charente Steamship Company, 348 F.2d 298, 301 (5th Cir., 1965); Watson v. Gulf Stevedoring Corp., supra, at 400 F.2d 652.

The Court has not been cited to any cases dealing with the application of the Longshoremen's and Harbor Workers' Compensation Act to seaplane pilots. Rather, it is contended that under the generally liberal construction given to the provisions of the Longshoremen's and Harbor Workers' Compensation Act Quave's activities should be found to be sufficiently maritime to fall within the scope of § 902(4). In Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct.

221, 86 L.Ed. 184 (1941), reh. den. 314 U.S. 716, 62 S.Ct. 477, 86 L.Ed. 570 (1942), the claimant's husband was a janitor and was told by the company which employed him that he was never to go into a boat. However, he disobeyed this rule and went along with another employee who was testing a boat for the company in order to keep a lookout for him. The boat capsized and the claimant's husband drowned. The Supreme Court held that the claimant could recover under the Longshoremen's and Harbor Workers' Act and said that even though the claimant's husband was "predominantly a non-maritime employee", this did not preclude him from being covered by the Act because "habitual performance of other and different duties on land cannot alter the fact that at the time of the accident he was riding in a boat on a navigable river, and it is in connection with that clearly maritime activity that the award was here made." Id. at 314 U.S. 247, 62 S.Ct. at 223. The Court pointed out the fact that § 902(4) covers all employers whose employees are employed in maritime employment "in whole *or in part*".

The same reasoning can be applied to this case, and the clause "in whole or in part" also becomes important here. Quave's activities were often over water, and it was over water that the fatal accident took place. His regular duties consisted in large part of traveling directly to offshore drilling platforms, and he could only reach these platforms by boat or seaplane. Often, he would have to stay offshore overnight or even for several nights. We hold that these activities are sufficiently maritime in nature so that Quave was covered by 33 U.S.C. § 902(4). It is therefore ordered that the defendant Mrs. Quave's motion for a summary judgment affirming the compensation award of the deputy commissioner be granted.