**H. H. LISENBY, Appellant,**

**v.**

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION et al., Appellees.**

**No. 7373.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 22, 1972.

Motion for rehearing overruled Dec. 7, 1972.

Joe H. Tonahill, Jasper, for appellant.

Mehaffey, Weber, Keith & Gonsoulin, Beaumont, for appellees.

STEPHENSON, Justice.

This is an appeal from an order of the trial court sustaining defendants' plea in abatement and plea to the jurisdiction "for the reason that the plaintiff's claim comes exclusively within the jurisdiction of the Federal Longshoremen's & Harbor Workers' Act." The parties will be referred to here as they were in the trial court.

There is little or no disagreement as to the facts in this case. Plaintiff, H. H. Lisenby, was employed by Bethlehem Steel Corporation as a maintenance mechanic doing both inside and outside work. Defendant, Texas Employers' Insurance Association, was his employer's insurance compensation carrier. This suit was brought to recover workmen's compensation benefits because of an injury received by plaintiff. Plaintiff was working on the wing wall of a dry dock when a rung of the ladder he was on broke, resulting in his injury. He was checking the bearings in

the wall at the time to see if they needed to be replaced. The dry dock was floating in the Neches River, which is admittedly a navigable stream. This dry dock could be raised and lowered for the purpose of taking on and discharging the vessel being worked on. No vessel was in the dry dock when this incident occurred. This dry dock was attached to the shore by means of a rail device that allows it to slide up and down as it is raised and lowered. There is no evidence that this dry dock was ever disconnected from the concrete pier and floated out of its position.

Applying the authorities cited to us and those which we have found to the undisputed evidence, we have concluded that the trial court properly granted the relief it did. Defendant discharged its burden of convincing the trial court that the dry dock in this case was a "dry dock" as that word is used in the federal statute and was not an extension of the land.

The Longshoremen's and Harbor Workers' Compensation Act is contained in 33 U.S.C. § 901 et seq. A portion of § 903 reads as follows:

"Section 903. Coverage.

"(a) Compensation shall be payable under this chapter in respect of disability or death . . . if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) . . . ."

Section 905 provides that where coverage exists, the federal remedy is exclusive.

The word "dry dock" is not defined in the Act, so we look to the authorities to see how it has been construed by our courts.

It is noted that this provision of the Act appears to be all-inclusive and covers any injury occurring upon the navigable waters of the United States, including any dry dock. Nothing is specifically written into the Act to indicate that any importance should be attached to the type of work being performed by the injured employee. From this, it appears to this court that the prime determining factor is whether the injury occurred upon navigable waters for the reason that coverage applies regardless of whether the injured employee was on a ship or dry dock. It is admitted that the dry dock in question was floating on navigable waters.

The authority chiefly relied upon by plaintiff is Travelers Insurance Company v. Shea, 382 F.2d 344 (5th Cir. 1967), cert. denied, 389 U.S. 1050, 88 S.Ct. 780, 19 L. Ed.2d 842. The statement as to the pertinent facts in such opinion is as follows:

"James D. McCollough, an employee of Levingson Shipbuilding Company, was injured while assisting in repairing a barge when feeding a sandblasting machine. At the time of injury, he was working on a floating outfitting pier, which consisted of floating steel barges tied end to end, approximately 750 feet long and connected to land by a 90 foot ramp, which had been permanently anchored to the shore and bottom of the navigable Sabine River by clusters of piling for eighteen years." (382 F.2d at p. 345-346)

The court came to the conclusion that there was no evidence McCollough was injured upon the navigable waters of the Sabine River. That court reaffirmed the statement of law that coverage of the Act is not keyed to function, but is situs-oriented. The court cited cases holding that structures such as wharves, piers and docks permanently affixed to shore have traditionally been held to be extensions of land. The court distinguished those cases from cases covered by the Act arising out of injuries occurring on dry docks located on navigable waters used to raise ships out of the water to make repairs, citing Avondale Marine Ways v. Henderson, 201 F.2d 437 (5th Cir. 1953) 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77. The court then makes

this analysis and places this construction upon the evidence:

"The court below found that McCollough was injured when 'working on a floating outfitting pier supported by barges. The pier was some 900 feet long and was permanently anchored to the shore and bottom of the Sabine River by piling clusters.' It had, moreover, been so anchored for eighteen years. This outfitting pier, in sum, was a structure permanently affixed as an extension of land. It was not akin to the skid in Arrien, supra [Michigan Mutual Liability Co. v. Arrien, 2 Cir., 344 F.2d 640], for it was the very antithesis of a transient or transitory structure. Its permanent home was in the water, and the waters below it had been completely removed from navigation. As such, it must be considered a pier or wharf, and injuries occurring upon it, like the one suffered by McCollough, are compensable only by local law and are not covered by the Longshoremen's Act. O'Keeffe, supra [O'Keeffe v. Atlantic Stevedoring Co., 5 Cir., 354 F.2d 48]; Revel, supra [American Export Lines, Inc. v. Revel, 4 Cir., 266 F.2d 82]; Nicholson, supra [Nicholson v. Calbeck S.D.Tex., 266 F. Supp. 103]; East, supra [East v. Oosting, E.D.Va., 245 F.Supp. 51]; Johnson, supra [Johnson v. Traynor, D.C.Md., 243 F.Supp. 184]. No conclusion contra is indicated by the Interlake Steamship Co. line of cases, discussed supra [Interlake S. S. Co. v. Nielsen, 6 Cir., 338 F.2d 879], since these cases are readily distinguishable on their facts from the one at bar.

"Appellees would have us liken this floating outfitting pier to a dry dock or to the land alongside a marine railway, since the pier can be used to repair a ship. Thus, they urge that we uphold the Deputy Commissioner's award. We are not, however, dealing with a dry dock or marine railway. A dry dock functionally as well as nautically is different from a floating barge. A dry dock lifts or shifts the ship. If it is to be a marine railway, it is hoisted upon land. If it is to be a dry dock, it submerges or fills with water. This floating barge does neither, and it must be remembered that the coverage of the Longshoremen's Act is not keyed to function but is situs-oriented. We are not impressed by the fact that McCollough was injured when assisting in repairing a vessel. We are, however, very impressed by the undisputed evidence, which shows that the situs of the injury to McCollough was a permanently anchored structure which, once built, was an extension of the shore of the Sabine River." (382 F.2d at p. 349)

We find many distinguishing features between the *Shea* case and the case before us. Even though the losing party in the *Shea* case attempted to convince the court there that the floating outfitting pier in that case was a dry dock, neither the trial court nor the appellate court agreed. The last paragraph of the *Shea* case quoted above makes it clear that dry docks are covered by the Act, but that the outfitting pier in that case was not a dry dock. It was not only permanently anchored to the shore and bottom of the river and had been for eighteen years, but there was no showing that it was used as a dry dock.

The evidence in the case before us supports the implied finding by the trial court that this accident occurred on a dry dock. All of the evidence shows its function to be that of a dry dock as described in the *Shea* case. The fact that the dry dock in our case was affixed to the bank does not alter the situation; it was still functionally a dry dock. See Atkins v. Greenville Shipbuilding Corporation, 411 F.2d 279 (5th Cir. 1969), cert. denied 396 U.S. 846, 90 S. Ct. 105, 24 L.Ed.2d 96. See also Flowers v. Travelers Insurance Company, 258 F.2d 220 (5th Cir. 1958), cert. denied, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582.

Affirmed.